## Arctic Ice Co. v. Franklin Electric & Ice Co.

(Decided October 19, 1911.)

### Appeal from Simpson Circuit Court.

1. Contract for Sale of Ice—Agreement Not to Manufacture—Restraint of Trade.—An agreement of an ice plant to sell to another ice plant its entire output and not to sell otherwise, was in effect to remove competition, and the contract was one in restraint of trade and violative of section 3915 Kentucky Statutes.

2. Same—Purpose of Contract.—The entire aim and purpose of the contract was to create a monopoly. Appellant neither sold nor leased its plant, but in consideration that it was given control of the business in the locality, and of the entire output of its rival in business, it agreed not to operate its plant in the territory affected.

C. B. MOORE, WHITESIDES & EVANS, for appellant.

ROARK & FINN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In 1909 the Arctic Ice Co. and the Franklin Electric & Ice Company were each engaged in the manufacture and sale of ice in Franklin, Simpson County, Kentucky, and surrounding neighborhood. They were the only companies engaged in that business in that locality and were active competitors. On November 20, 1909, the Franklin Electric & Ice Co. executed a deed of assignment for the benefit of its creditors to Warner U. Grider, as assignee. He entered upon the discharge of his duties, after having qualified according to law, and remained in charge of the business until in March, 1910, when the following contract was made and entered into between the Franklin Electric & Ice Co. and Walter

Stringer and E. L. Gillespie, partners, doing business under the name of the Arctic Ice Co.:

"This agreement made and entered into this the 28th day of March, 1910, by and between the Franklin Electric Light and Ice Co., a corporation under the laws of Kentucky, the first part, and Walter Stringer and E. L. Gillespie, partners doing ————————— under the name of Arctic Ice Company, second part,

"WITNESSETH, The party of the first part agrees to furnish and deliver to the party of the second part the output of its ice plant, not to exceed fifteen tons per day, in the cold storage room of said plant, to keep its plant in good working condition, and that the ice furnished shall be first class in quality, and further agrees that in case of accident or failure on its part to manufacture a sufficient quantity of ice to supply the demands of the party of the second part, not to exceed fifteen tons per day, they will secure and ship to Franklin a sufficient amount of first class ice to make good the deficiency. In this case the party of the second part agrees to receive the ice shipped in the cars at the depot at Franklin, and to protect first party hereto against any demurrage on said ice. Second party agrees to pay for so much of said ice as they use at the rate of $3.75 per ton, payable monthly, on or before the 5th day of each month, upon which date the ice received in the previous month is to be accounted and paid for. Second party agrees to retail said ice in Franklin and Simpson County and in adjoining counties at the following prices, to-wit:

"Delivered in the city of Franklin, in quantities less than 100 pounds, at the rate of sixty cents per hundred.

"More than 100 pounds, and less than 200 pounds, fifty cents.

"In blocks of 200 pounds forty cents per hundred.

"In blocks of 300 pounds, and less than a ton, thirty-five cents per hundred.

"In ton lots or more—cents per ton.

"To country clubs, or purchasers living outside of the territory in which second ————————— hereto shall deliver ice, the price shall be from twenty-five to thirty-five cents per ton delivered to purchaser at the ice plant. It is further agreed that first party hereto shall not sell any ice to any person or persons except through the second party hereto, and said second party shall use due diligence in pushing the business and developing it within

his territory to as large proportions as possible, maintaining a sufficient force of wagons, teams, and men to give prompt delivery and good service in the territory in which the ice is to be delivered and to have at the plant a man at all reasonable times to wait upon the country clubs and other customers who will receive ice at the plant.

"The parties of the second part agree not to operate at any time their ice plant in Franklin or Simpson county, nor to sell or lease same to any other parties to be operated in Franklin or Simpson County.

"This contract to continue in force and effect during the ice season of 1910 and 1911, and it is agreed that the ice seasons shall commence on the 1st day of April and end at option of party of second part upon one week's notice to first party on or after the —— day of ————.

"It is further agreed that at the expiration of this contract second party hereto has the option of renewal or extension for three years at a schedule of purchase and selling prices then to be agreed upon by the parties hereto.

"Any violation of the terms of this contract on the part of either party hereto resulting in damage or loss to the other party shall be adjusted between themselves if possible, but in case of failure on their part to adjust said damage or loss if any each party hereto agrees that the difference between them shall be arbitrated.

"This contract is executed in duplicate, a copy being held by each party hereto.

"Given under our hands the date first above written.
     (Signed)     "FRANKLIN ELECTRIC & ICE CO.,
                   "By W. H. ISBELL, Mgr.
                   "J. T. LOVELL, President.
                   "W. T. STRINGER,
                   "E. L. GILLESPIE."

Under this contract the parties operated until about the first of September, 1910, when the Franklin Electric & Ice Company declined further to comply with its terms or furnish ice to the Arctic Ice Co., whereupon the Arctic Ice Co. brought a suit in the Simpson Circuit Court to recover damages which it alleged it had sustained by reason of this breach. The defendant company admitted the execution of the contract, and its breach, but pleaded that it was entered into for the purpose of destroying competition and fixing the price of manufac-

tured ice in that city and locality above its real value; that prior to the time it entered into this arrangement with the defendant company it had sold ice in quantities at the factory for fifteen cents a hundred, and to consumers in any quantity desired for twenty cents a hundred, and that these same prices had been charged by the plaintiff company. It further pleaded that, at the time the contract was entered into, it was in the hands of a receiver, who was acting under direction of the chancellor, and that the officers of the company were without power or authority to make such contract.

The plaintiff in its reply traversed the allegations of the answer, and particularly the second paragraph thereof, in which it was pleaded that the contract was entered into in violation of the statute and was unenforcible as being clearly in restraint of trade. A demurrer was sustained to this paragraph of the reply, plaintiff declined to plead further, its petition was dismissed, and from this ruling and judgment it prayed and was granted an appeal.

Under the terms of this agreement the Arctic Ice Co. obligated itself to permit its plant to remain idle and to take the output of the Franklin Electric & Ice Co., and pay it therefor $3.75 per ton, and to buy ice from no other plant. It was agreed that appellant should retail the ice thus purchased of appellee at a price so much in advance of that at which the pleadings show it had theretofore been retailed in that city and locality, that it is apparent this must have been the feature of the contract which induced appellant to enter into it. On the other hand, the feature of the contract which appealed to appellee was the purchase of its entire output at a satisfactory figure. Appellee was to manufacture all of the ice that could be used in that locality. Appellant was to manufacture no ice, but to handle the output of appellee's plant, and, having removed its only competitor, it was assured in advance that it would be enabled to dispose of this output, at a price in some instances alleged to be more than two hundred per cent. above that it was able to command for its ice in the open market when operating in competition with appellee. It is true that appellant in terms denied the material allegations of the answer and pleaded the purposes , for which the contract was entered into. This reply in many particulars was faulty. When appellee alleged that appellant had theretofore sold ice at fifteen and twenty cents, and appellant in its reply denied that

it had sold ice at these figures, and failed to set out at what price it had theretofore sold ice at its factory and at retail, the court was warranted in finding that, while not at exactly these figures, it had sold ice at approximately these figures. And when, under the plain terms of its contract, by removing competition it was enabled to raise the price to more than double what it had theretofore been, the chancellor was warranted in holding that the contract was one, not only violative of section 3915 of the statutes, but in restraint of trade. It needed no evidence to show the purposes for which it was entered into. The people of that town and locality were dependent upon the two plants for their ice supply. As long as they were running in competition with each other for the business the people of that community were enabled to purchase their ice at a reasonable price; but so soon as the contract was entered into, instead of paying twenty cents a hundred for ice delivered in quantities less than a hundred pounds, they were required to pay sixty cents; and for large quantities the ratio of increase in price was proportionately large.

In obligating itself not to sell or lease its plant, or the output thereof, to any one to be operated in either Franklin or Simpson County, the appellant secured to the appellee the right to manufacture all the ice that was used in that territory; while appellee, in obligating itself not to sell ice to any one other than appellant, secured to appellant the exclusive control over the sale of ice in that territory. If the arrangement was not to regulate the price, or rather, to place them in a position where they could regulate the price and throttle competition, it is difficult to understand the purpose for which it was entered into. Appellant owned an ice plant, and if the purpose of the contract was not to create a monopoly, why was it willing that its plant should remain idle, or no longer manufacture ice in that locality, or be leased or sold to anyone who would so operate it? Or why was appellee willing to consent that the ice should be retailed at the enormous prices which were agreed upon in this contract if it was not to secure to itself the exclusive right to manufacture ice in that locality? The answer to each question is found in the statement that it secured to these respective companies freedom from competition and placed them in absolute control of the market with the right to fix the prices as they pleased.

But, it is urged for appellant, this restraint of trade,

even if it be such, is only such reasonable restraint as had been frequently upheld. In numerous instances this court has held that where one sells to another his business and good will, and obligates himself not to engage in that business in that locality within a reasonable time, such an agreement is binding and enforceable. But here there was no sale or lease of the property. The entire aim and purpose of the contract, as shown by the contract itself, was to create a monopoly. Appellant neither sold nor leased its plant to the Franklin Electric & Ice Co., but, merely in consideration that it was given control of the ice business in that locality, and of the entire output of the Franklin Electric & Ice Co., it agreed not to operate its plant in Franklin or Simpson County.

In 2 Beach on Contracts, Sec. 1575, the rule is thus stated:

The modern doctrine is well-nigh universal that when one engaged in any business or occupation sells out his stock in trade and good-will or his professional practice, he may contract with the purchaser and bind himself not to engage in the same vocation in the same locality for a time named, and he may be enjoined from violating this contract. This is about as far as contracts in restraint of trade have been upheld by the American courts or those of England. While the law, to a certain extent, tolerates contracts in restraint of trade or business when made between vendor and purchaser and will uphold them, it does not treat them with any special indulgence.''

A case in many respects similar to that under consideration was before the court in Tuscaloosa Ice Mfg. Co. v. Williams, 50 L. R. A., 175. There were two ice companies which were owned and being operated in Tuscaloosa. One of the parties agreed, for a stipulated sum, to be paid by the other, not to run, or suffer his plant to be run, for five years at Tuscaloosa. The other company failing to make payment as per their agreement, suit was instituted to enforce its collection. The defense interposed was that the contract was void as being in restraint of trade and against public policy. For the plaintiff it was contended that the contract was not void because it was limited both as to time and territory. The court held that, as there was no purchase of the plant, the contract was plainly in restraint of trade and void, and in distinguishing that character of contract from those in which a reasonable restraint of trade has been upheld, when accompanied by a sale of the property, said:

"Its purpose and effect are, not to protect the covenantee in the legitimate use of something he has acquired from the convenantor, but to secure to him the legitimate use, or the use in an illegitimate way, of that which he already has, in respect of which there is no reason or occasion for the covenantor to assume any obligation of protection. Such an undertaking in restraint of trade, however limited as to time and place, would seem, upon all general principles, though we know of no case expressly and directly so deciding, to be necessarily unreasonable and vicious on the consideration alone that it is not entered into nor has it the effect of protecting some business, practice, trade, or interest which the covenantor has sold to the covenantee. The undertaking involved in this case is precisely of that class, and must fail upon the principle we have been discussing."

To the same effect is Keene Syndicate v. Witchita Gas, Electric Light & Power Co., 67 L. R. A., 61, and Clark v. Needham, 51 L. R. A., 785. In Clemmons v. Meader, 123 Ky., 181, this court had under consideration the valility of a contract between two hotel companies, by the terms of which, in consideration of a certain stipulated sum, one of the hotels was to be closed and kept closed three years. It was held that such a contract was unenforceable, as against public policy and in restraint of trade. The Tuscaloosa Ice Co. case, supra, was cited with approval.

In the recent case of Merchants' Ice & Cold Storage Co. v. Rohrman, 138 Ky., 530, this court had under consideration a question in many particulars similar to that presented here. There in an effort to avoid the effect of previous decisions and evade the statute, a corporation was formed for the purpose of buying over many ice plants in the city of Louisville, and the stockholders and owners of these various plants so purchased entered into an agreement not to engage, directly or indirectly, in the business of manufacturing or selling ice in the city of Louisville or Jefferson County. This contract was broken by one of the parties thereto, and, following this breach, suit was instituted to recover damages therefor. In passing upon the question, this court said:

"If a contract is made that suppresses competition, and controls the market, and that contract is entered into between those who have theretofore engaged in competition in the market sought to be controlled, it is a contract in restraint of trade. It may be more. It may

amount to a trust or conspiracy or a monopoly, but it is nevertheless a contract in restraint of trade. To restrain trade is the essential feature of the contract—the reason why it was made. If trade that is in competition could not be restrained, the promoters would not go into the scheme; and when such a contract is made, whatever form it may assume, or by whatever name it may be called, and although it may be reached under the law of monopolies, trusts, and conspiracies, it will be declared void as being in unreasonable restraint of trade."

In that case it was shown that there were several independent ice companies operating in Louisville that were not connected with this combine, and yet the court held that, if the effect of the combination was not to create a monopoly, it was at least a contract in restraint of trade, and for that reason void.

Here a stronger case is presented, for there were only two ice plants in Franklin, and when they entered into the arrangement set out in the contract it was for the evident purpose of enriching themselves at the expense of the public, in a way which has been condemned by courts generally wherever the question has been raised.

It is unnecessary to consider the other questions raised by the pleadings. The chancellor did not err in holding the contract under consideration unenforceable.

Judgment affirmed.