## Arctic Ice Company v. Franklin Electric & Ice Company's Assignee.

(Decided December 9, 1913).

### Appeal from Simpson Circuit Court.

1. Assignment for Benefit of Creditors—Assignee not Affected by Vice in Contract of Assignor.—Where a corporation made a contract that was unlawful, and therefore not enforceable, the vice in this contract did not affect the right of the assignee to recover the price of goods manufactured and sold by him while acting as assignee, although if the goods had been manufactured and sold by the assignor the contract price could not have been recovered.

2. Assignment for Benefit of Creditors—Right of Assignee to Recover Price of Goods Sold by Him—Facts Stated.—A corporation entered into a contract with a firm to supply it with ice. This contract being in restraint of trade was void and non-enforceable. Afterwards the corporation made an assignment and the assignee took charge of the plant and manufactured and sold ice to the firm at the price specified in the unlawful contract. Held, that the assignee could not be defeated in his efforts to recover the price of the ice by the vice in the contract made by the corporation.

C. B. MOORE and O'REAR & WILLIAMS for appellant.

ROARK & FINN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The Franklin Electric & Ice Company, a corporation engaged, among other things, in the manufacture and sale of ice, made a general assignment for the benefit of its creditors to Warner U. Grider in November, 1909. Grider accepted the trust and continued as assignee until April, 1910, when he resigned as assignee and James T. Lovell was appointed in his place and qualified. The

appellant, the Arctic Ice Company is a partnership composed of Gillespie & Stringer, doing business under the name of the Arctic Ice Company.

In 1912 Lovell, as assignee, brought suit against the Arctic Ice Company to recover $271.40 alleged to be due for ice purchased from him by it.  In his petition he charged that "after he was appointed assignee of said corporation, from September 1st to September 10th, 1910, inclusive, at the special instance and request of the Arctic Ice Company he sold and delivered to said Arctic Ice Company 74.4 tons of ice.  That said ice was then reasonably worth $3.75 per ton, making a total of $271.40, in which amount the Arctic Ice Company are justly indebted to the plaintiff."

To this petition the Arctic Ice Company filed an answer in which it denied "that after the plaintiff was appointed assignee of said corporation, to-wit: On September 1st to September 10th inclusive, at the special instance or request of the Arctic Ice Company he sold or delivered to it 72.4 tons of ice.  They deny that said ice was reasonably worth $3.75 per ton, making a total of $274.40, which sum they deny is justly due and owing the plaintiff.  They admit that they did get between September 1st and September 10th, inclusive, 72.4 tons of ice from the Franklin Electric & Ice Company, of which J. T. Lovell was assignee, but they aver that this 72.4 tons of ice furnished them or sold to them by the plaintiff was in pursuance or by virtue of a written contract, which contract is filed herewith and made a part hereof.  Said contract is dated March 28, 1910, and is in words and figures as follows: *  *  *".

It then averred that the contract was illegal and void as being in violation of the anti-trust laws of the State, and pleaded and relied upon these laws, which were set out in the answer, as a bar to the plaintiff's right to recover.

The record shows that the following orders were made: "Ordered by the court that the above cause be set for trial on the fourth day of this (March) term of court. Ordered that this case be submitted for trial."  Then follows a judgment reciting that "this cause having been submitted to the court for final judgment upon the pleadings and exhibits filed and the court being sufficiently advised, is of the opinion and so adjudges that the plaintiff as assignee recover of the defendants, Gillespie & Stringer, partners doing business under the name of

Arctic Ice Company, the sum of $274.40, with interest from September 10, 1910, until paid.''

From this judgment the defendant in the suit below, the Arctic Ice Company appeals.

In the case of the Arctic Ice Company v. Franklin Electric & Ice Company, 145 Ky., 32, this court held that the contract entered into in March, 1910, between these companies, and which is the same contract relied on by the Arctic Ice Company to defeat a recovery in this case, was void and non-enforceable because it violated the anti-trust laws of the State. The contract is set out in full in the opinion referred to.

The vice in this contract might have prevented a recovery by the Franklin Electric & Ice Company if it had been a going concern and by virtue of and under this contract had sold the ice in question to the Arctic Ice Company, although we do not find it necessary in this case to decide the question whether a party who receives goods under a contract made in violation of law can retain the goods and refuse to pay for them.

But it seems quite clear that the vice in this contract cannot be relied on to defeat a recovery by the assignee of the Franklin Electric & Ice Company. The assignee, who sold this ice to the Arctic Ice Company, is not chargeable with the invalidity of a contract made by the Franklin Electric & Ice Company. It is true that this contract, which appears from the record to have been made by the Franklin Electric & Ice Company as if it were a going concern, was in fact made several months after it had made an assignment to Grider and while its affairs were being administered by him as assignee, but what authority this corporation had to enter into this contract when its affairs were in the hands of an assignee, is difficult to understand, and the record does not disclose how this curious situation arose. But, however this may be, the case we have is not with the Franklin Electric & Ice Company but with its assignee.

The Franklin Electric & Ice Company did not sell the ice in question to the Arctic Ice Company, nor is it seeking to recover the price of the ice. The ice, the value of which is sought to be recovered, was sold to the Arctic Ice Company by Lovell as assignee, and Lovell, as assignee, is not to be defeated in the collection of a just debt by the fact that before he took charge of the affairs of the corporation it had entered into a contract in violation of the laws of the State. When Lovell, as assignee, assumed the execution of the trust and undertook to

administer the affairs of the assigned corporation, his acts and contracts and sales as assignee are not to be affected by the vice in a contract with which he was in no manner connected as assignee.

The deed of assignment is not in the record, but it must be presumed that it filled the requirements of sections 74 and 75 of the Kentucky Statutes and conveyed to the assignee all of the property and assets owned by the corporation, which of course included the plant in which ice was manufactured and all appliances connected therewith. So that after the assignment, and while the assigned property was in the hands of the assignee, the Franklin Electric & Ice Company as a corporation could not manufacture, at the plant that had been conveyed to the assignee, any ice. Its power and authority to transact business had been transferred to the assignee, and whatever defenses the Arctic Ice Company may have been authorized to make against the Franklin Electric & Ice Company growing out of an unlawful contract between these two concerns, cannot be allowed to defeat the right of the assignee to recover the value of property that he manufactured and sold as assignee. If the infirmity in the contract the Franklin Electric & Ice Company made with the Arctic Ice Company should be allowed to defeat a recovery by the assignee under the circumstances of this case, we would have the curiously unjust rule of an assignee being denied the right to recover for the benefit of creditors the value of goods manufactured and sold by him as assignee merely because his assignor could not have recovered the value of the goods if they had been manufactured and sold under a contract made with it while it was a going concern. Pittsburg Carbon Co. v. McMillen, 119 N. Y., 46, 7 L. R. A., 46.

It is further insisted that the submission of the case was premature and that the court committed error in rendering the final judgment on the petition and answer. But this argument is answered by the very terms of the record which has been heretofore set out, and which shows that there was no objection to the submission for final hearing upon the petition and answer. Indeed, the fair interpretation of the record is that it was an agreed submission upon these pleadings.

The judgment is affirmed.