CHIEF JUSTICE LINDSAY
delivered .the opinion od the court.
Caswell Smith had been indicted for the crime of horse stealing, and was confined in the jail of Greenup County. His bail had been fixed at the sum of $600,' and he was released from confinement upon Ratcliffe becoming his bondsman. Shortly afterward he conveyed to Ratcliffe, by unconditional deeds, two tracts of land. He also delivered to him personal property of considerable value.
' He instituted this action in equity to have the conveyances declared mortgages, and the delivery of the personal property a contract or pledge; to indemnify Ratcliffe against liability as his bondsman, and as security for certain small sums of money *174 advanced to him, and agreed to be paid to certain of his (Smith’s) creditors.
Ratcliffe denies that the conveyances were intended as mere securities, or that the personal property was left in pledge. He insists the sale of the real and personal estate was unconditional, and avers that the consideration in part was the consent by him that Smith should leave the state 'and fail to answer the criminal charge pending against him. And the facts averred and proved showed that Smith did leave the state; that his bail bond was forfeited, and that so much of it as was not remitted by the governor has been paid by Ratcliffe.
The nature of the contract between the parties is proved by the witnesses Davidson and Corum. They say, “The consideration for said deeds was that Ratcliffe was to stand between the commonwealth and said Smith, as he (Smith) was going to leave the state, and not appear to the indictment then pending in the Greenup Circuit, wherein Ratcliffe had gone his bail, and to litigate ■ the suits then pending about said land, and should Smith, or said Ratcliffe for him, succeed and recover said land then said Ratcliffe was to make said Smith a good and sufficient title or deed for about two hundred and forty acres of land in some of the western states or territories.”
All the evidence before us tends to show that the foregoing is substantially an accurate statement of the contract and agreement between Smith and Ratcliffe.
It was the legal duty of the latter, as bondsman, to act as the friendly custodian of Smith, and to see that he should appear to answer the charge upon which he stood indicted. In consideration of the real and personal property conveyed and delivered to him he agreed to disregard this duty, and to permit Smith to flee the state and set its laws at defiance. In this matter the parties were in pari delicto. Each of them agreed, and, pursuant to that agreement, each of them did violate the law and attempt to defeat the ends of public justice.
*175 One of these parties now invokes a court of equity to relieve him against the consequences of his illegal contract.
An agreement which is expressly, or by implication, forbidden by law, or which is against public policy, will not be enforced in a court of law. Neither will an executed contract, resting on such a consideration, be relieved against in equity.
“ It is a general principle, applicable both in chancery and at law, that where two unite in making an illegal and immoral contract neither shall have remedy to enforce it, and if either fulfill, the other shall not recover back the money paid on such a base and illegal consideration, according to the maxim, in pari delicto potior est conditio defendens.” (Downs v. Quarles, Littell’s Selected Cases, 489.)
The application of this principle is conclusive of this case. The chancellor should not stop to inquire whether one of the parties to the forbidden and illegal transaction has defrauded the other. It is enough that neither of them is in a position to demand relief at his hands.
The petition should have been dismissed; and the judgment appealed from is reversed, and the cause remanded for a judgment conforming to these views.