## Fields, et al v. Holland & Son.

(Decided April 24, 1914.)

### Appeal from Calloway Circuit Court.

1. Carriers—Common Carrier—What Is—Contracts Between Common Carriers in Restraint of Trade.—A company, whether incorporated or a copartnership, which engages in the business of operating an omnibus line for hauling passengers and wagons for hauling freight, either or both, is a common carrier in the meaning of section 201, Constitution; and where two of such companies in the same place enter into a contract whereby one of them, in consideration of a sum paid it by the other and the undertaking of the latter to confine its business to the hauling of passengers alone, and abandon and turn over to the former the business of hauling freight alone, and the former obligates itself to quit the business of hauling passengers and confine itself to the hauling of freight alone, such a contract is in restraint of trade, contrary to public policy and violative of Section 201, Constitution.

2. Carriers—Effect of Such a Contract—How Detrimental to Public Good.—Such a contract is not to be regarded as a contract made for the protection of a private right which it creates, with an incidental, partial and reasonable restraint of trade, but is one made between common carriers with a direct purpose to restrain trade and create a monopoly, detrimental to the public good, in favor of each of the contracting parties; as it would put in the hands of one of the parties, exclusively, the entire business of hauling passengers, and of the other, exclusively, the entire business of hauling freight, in the same community.

3. Carriers—Neither Party Entitled to Relief Against Such a contract.—In view of its illegality such a contract will not be enforced or rescinded by the court at the suit of either party thereto; nor will the court award to either party damages against the other for its breach. The contract being against public policy and the parties in pari delicto, no right of action can be predicated thereon by either of them. They will be left by the court where their own conduct placed them.

A. D. THOMPSON, J. P. HOLT for appellant.

RAINEY T. WELLS, COLEMAN & WELLS and HOLLAND & RYAN for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought in the court below by the appellants, J. H. Fields & Son, a partnership, at the time of making the contract hereinafter mentioned composed of J. H. Fields and Lee Fields, but later succeeded by Lee Fields and Noah Moody, under the same style,

against the appellees, E. G. Holland & Son, a partnership composed of E. G. Holland and Oscar Holland, to compel the specific performance of a written contract the latter made with appellants in 1909, and restrain them by injunction from operating a competing omnibus line in further violation of same. The contract, omitting the signatures, is as follows:

"This contract or agreement this day made and entered into by and between E. G. Holland and son, a firm composed of E. G. Holland and Oscar Holland doing a general transfer business in the city of Murray, Ky., party of the first part, and J. H. Fields and son, a firm composed of J. H. Fields and L. V. Fields, of the city of Murray, of the second part, witnesseth that for and in consideration of $1,500.00 cash in hand paid the receipt of which is hereby acknowledged by J. H. Fields and son to E. G. Holland and son, and the further consideration that the said Fields and son, nor either of them shall not at any time within the corporate limits of the city of Murray, or within the immediate vicinity surrounding the corporate limits of the city of Murray, go into in opposition to the said Holland and son, nor either of them operating the business of the transferring of freight within said territory, they have this day and do by this contract sell and deliver unto the said J. H. Fields and son, the following described property, to-wit: Two, two-horse busses, being the busses owned and operated by us in said city, and one two horse transfer wagon, and do hereby further agree which is a part of the consideration of this contract that we will not or either of us at any time re-enter or go into the business of transferring passengers and their personal baggage, such as trunks, etc., as against the said Fields and son or either of them within the corporate limits of said city, or within the vicinity surrounding the said corporate limits, and they further and hereby agree that they will not, at any time within the corporate limits of said city or the vicinity surrounding the said city, go into the livery stable business in opposition to said Fields and son or either of them and we further assign and do hereby transfer as a part of the consideration of this trade our contract with the United States Government, or Post Office Department for the carrying of the U. S. Mails from the depot in Murray to the post office in Murray & Return and assign to the said Fields and

son not only the said contract but the remuneration thereunder and agree that the said Fields and son may carry the said mail in our name and authorize and direct the checks amounting to $15.00 per month to be turned over to and paid to them from this date, and further agree that should the said contract for carrying the mail be relet not to bid against them or either of them should they desire to bid. It is further agreed by and between the parties hereto that each shall give to the other in their respective business herein agreed to, their good will and the same is here signed.''

It appears from the provisions of the contract, and allegations of the petition, as amended, that at the time of and prior to the making of the contract appellants and appellees were both engaged, in the town of Murray and vicinity, in the business of hauling, transferring and delivering passengers and freight from place to place in and about the city and vicinity, and to and from the railroad station, each firm owning and operating in the business busses, wagons and other vehicles necessary to its successful prosecution; that by the terms of the contract appellants sold and surrendered to appellees so much and all of the business in which they had been mutually engaged as appertained to the hauling, transferring and delivering, within the city of Murray and vicinity and to and from the railroad station, of freight of whatsoever kind, including appellants' good will, appellants obligating themselves not to again engage in that character of business in Murray or vicinity; in consideration of which undertaking on the part of appellants and the payment by them to appellees of $1,500.00, cash in hand, the latter sold and delivered to appellants two two-horse busses, one two-horse transfer wagon; and in addition, sold and surrendered to them so much and all of the business that they (appellees) had been and were then conducting, as appertained to the hauling and transferring of passengers and their baggage in Murray and vicinity, and to and from the railroad station, including their good will; and obligated themselves not to again operate busses or engage in the business of hauling or transferring passengers or their baggage in the same territory; that in addition, and as a further consideration for the undertaking on the part of appellants mentioned and the $1,500 paid by the latter, appellees sold, assigned and transferred to them a contract with

the United States government for carrying the mails between the post office in Murray and the railroad station, which paid $15.00 per month, and had a year to run from the date of the contract.

It was further alleged in the petition that the provisions of the contract in question were in good faith complied with and carried out by appellants, but that appellees, after a few months apparent compliance with the terms thereof, wrongfully violated the contract by again engaging in the business of hauling and transferring passengers and their baggage and depriving appellants of the privilege of carrying the United States mails between the post office and railroad station at Murray, and again carrying it themselves; by all of which violations of the contract appellants were damaged in the sum of $1,500.00. By the prayer of the petition appellants asked a specific performance of the contract and an injunction restraining appellees from further violating it; but, if the court should be of opinion that they were not entitled to this relief, that they be granted a rescission of the contract and recovery of the $1,500.00 which they had paid appellees, with interest, less the value of the busses and wagon purchased of them; and if in the opinion of the court they were not entitled either to the specific performance or rescission of the contract, that they be adjudged entitled to recover $1,500.00 by way of damages for its violation by appellees.

The appellees, E. G. Holland & Son, and E. G. Holland individually, filed a joint and separate answer to the petition containing a traverse of its averments and alleging that the contract in question was first violated by appellants, who, contrary to its provisions, resumed the business of hauling and transferring freight in the city of Murray and vicinity, and to and from the railroad station, in which business they were still engaged at the time of the institution of their action. The answer admitted appellees' resumption of the carrying of the mails between the Murray postoffice and railroad station, but alleged that they were compelled to do so because of appellants' failure to carry them as they had obligated themselves by the contract to do, and because of the liability such failure imposed upon appelees on the bond they had executed to the United States, upon which they and their sureties remained bound, notwith-

standing their assignment of the mail contract to appellants. It was further alleged in the answer that at and subsequent to the time the contract between appellants and appellees was entered into there were two passenger bus lines and two freight transfer lines being operated in Murray and vicinity; one of these bus and freight transfer lines being operated by appellants and the other by appellees, and both being common carriers; that by reason of the operation of these two passenger bus and freight transfer lines, competition in passenger and freight rates, beneficial to the public, was maintained; but that by the contract made between appellants and appellees and following its execution, there was in Murray and vicinity but one passenger bus line and one freight transfer line, the one operated by appellants and the other by appellees; and that the object and effect of the contract was to destroy competition and create a monopoly in the passenger transfer business for the benefit of appellants and a like monopoly in the freight transfer business for the benefit of appellees, in violation of the public policy of the State and contrary to the provisions of section 201 of its Constitution.

The affirmative matter of the answer was controverted by reply and following the taking of proof and submission of the case the circuit court, by the judgment rendered, refused appellants any and all relief and dismissed the petition. Of that judgment appellants strongly complain, hence this appeal.

It it manifest from the pleadings and evidence in this case that, at the time of making the contract under consideration, appellants and appellees were common carriers, because engaged in the business of carrying both passengers and freight for hire at the same place; the business being one which affected, not a few individuals or a single community, but the entire public. Persons residing in the State or out of it, who visited Murray on business or pleasure, or who shipped merchandise to Murray or who received merchandise therefrom, were as much as the citizens of Murray and vicinity, dependent upon these carriers and in a situation to be benefitted or oppressed by them. It may well be said, therefore, that the business in which both appellants and appellees were engaged was distinctively a public business.

It is equally manifest that they were competitors in this public business and that the effect of the competi-

tion between them was to restrain each carrier from making or maintaining exhorbitant charges for carrying passengers or freight and to compel them to be reasonable and just in such charges. By the contract in question the business in which the two competitors had theretofore engaged was divided; appellants, by the compulsory provisions of the contract, became exclusively a carrier of passengers and their baggage; appellees, by like compulsion, became exclusively a carrier of freight, and by this means, instead of two carriers of both passengers and freight, there was left in Murray but a single local carrier of passengers and a single local carrier of freight. So, the inevitable and immediate effect of the contract was, as intended by the parties, to destroy the competition previously existing between them and establish a monopoly for each carrier in a single line of business. It is apparent from the record that the increase in charges for the carrying of both passengers and freight in Murray and vicinity, resulting from the contract, became at once burdensome and injurious to the public.

In view of this situation the viciousness of the contract between appellants and appellees is clearly established. The great disfavor in which such contracts are held both by the law and the courts is demonstrated by section 201, Constitution, and the numerous decisions declaring them void. The section of the Constitution, *supra,* provides:

"No railroad, telegraph, telephone, bridge or *common carrier company* shall consolidate its capital stock, franchises or property, or pool its earnings, in whole or in part, with any other railroad, telegraph, telephone, bridge or *common carrier company,* owning a parallel or competing line or structure, or *acquire by purchase, lease or otherwise, any parallel or competing line or structure, or operate the same;* nor shall any railroad company or other common carrier combine or make any contract with the owners of any vessel that leaves or makes port in this State, or with any common carrier, by which combination or contract the earnings of one doing the carrying are to be shared by the other not doing the carrying."

It will be observed that the inhibition in this section includes any and every character of *common carrier company* and prevents it from acquiring or operating by

purchase, lease or otherwise, any parallel line or competing business. It, therefore, applies to appellants and appellees and the contract made by them. Where there are, in the same city or town, two competing transfer companies, whether incorporated or co-partnerships, engaged in the business of operating busses or other vehicles in hauling passengers and freight, they are as much common carriers as a railroad company, and the busses and other vehicles operated by them are competing lines in the meaning of the section of the Constitution, *supra.*

As previously stated, there are numerous decisions, many of them from this court, condemning such contracts. Thus, in L. & N. R. R. Co. v. Commonwealth, 97 Ky., 675, and in Commonwealth v. L. & N. R. R. Co. and F. & C. R. Co., 144 Ky., 324, we held that a court of equity has jurisdiction in an action by the State to enjoin a railroad company from doing acts illegal and injurious to the public, and in each case the L. & N. Railroad Company was prevented by injunction from consummating the purchase of a parallel or competing line in violation of section 201 of the State Constitution. L. & N. R. R. Co. v. Commonwealth, 161 U. S., 677. Again in Calor Oil & Gas Co. v. Franzell, 128 Ky., 715, we held that a lease, granting to a gas company the exclusive right to construct pipe lines across the lessor's land was void as against public policy, insofar as it excluded others from crossing the tract.

Such contracts between persons and companies other than common carriers have also been condemned by this court. One of the latter cases is that of Clemmons vs. Meadows, 123 Ky., 178, in which it was held that a contract between competing proprietors of hotels in a town, whereby one of them agreed to keep his hotel closed for three years, reserving the right to rent the same for offices and for roomers; and whereby the other agreed to pay a specified sum monthly to the former during the three years, was in restraint of trade and illegal, since a hotel is a quasi public institution and an agreement by a proprietor not to perform a duty imposed on him by law is in contravention of public policy. Anderson v. Jett, 89 Ky., 375.

Another such case is that of Arctic Ice Co. v. Franklin Electric Ice Co., 145 Ky., 32, in which it was held that an agreement of an ice plant to sell to another ice

plant its entire output and not to sell otherwise was in effect to remove competition, which made the contract one in restraint of trade and violative of section 3915, Ky. Stats. This was necessarily so, because the intent and effect of the contract was to create a monopoly. The one party neither sold nor leased its plant, but in consideration that it was given control of the ice business in the locality and the entire output of its rival in business, it agreed not to operate its plant in the territory affected. Merchant's Ice & Cold Storage Co. v. Rhorman, 138 Ky., 530.

The same question was also raised in Tuscaloosa Ice Mfg. Co. v. Williams, 50 L. R. A., 175. In that case one of two ice companies which were owned and being operated in Tuscaloosa agreed, for a stipulated sum, to be paid by the other, not to run its plant for five years at Tuscaloosa. Upon the other company's making default in the payment agreed on, suit was brought to enforce its collection. The defendant pleaded that the contract was void as being in restraint of trade and against public policy. On the other hand, the plaintiff contended that the contract was not void because it was limited both as to time and territory. The court, however, held the contract void and in so holding in the opinion said:.

"Its purpose and effect are, not to protect the covenantee in the legitimate use of something he has acquired from the covenantor, but to secure to him the legitimate use, or the use in an illegitimate way, of that which he already has, in respect of which there is no reason or occasion for the covenantor to assume any obligation of protection. Such an undertaking in restraint of trade, however limited as to time and place, would seem, upon all legitimate principles, though we know of no case expressly and directly so deciding, to be necessarily unreasonable and vicious on the consideration alone that it is not entered into, nor has it the effect of, protecting some business, practice, trade or interest which the covenanter has sold to the covenantee. The undertaking involved in this case is precisely of that class, and must fail upon the principle we have been discussing."

There is another line of cases which hold that a contract in partial restraint of trade will be upheld when it is an incident to and is in support of another contract or sale in which the covenantor has an interest which is in need of protection; but that contracts of this kind will

be enforced only when the restraint is no more extensive than is reasonably required to protect the interest of the party in whose favor it is given, and is not so large as to interfere with the interests of the public. Among the cases included in the class last mentioned is that of Barrone, et al. v. Moseley Bros., 144 Ky., 698; and Tinneman & Moore v. Allison & Yates, 142 Ky., 309. The instant case, however, is not controlled by the principle announced in the two cases last mentioned, but by that declared in Clemmons v. Meadows; Anderson v. Jett; Merchant's Ice & Cold Storage Co. v. Rhorman; Arctic Ice Co. v. Franklin Elec. Ice Co.; Tuscaloosa Ice Mfg. Co. v. Williams; L. & N. R. Co. v. Commonwealth; and Commonwealth v. L. & N. R. Co. and F. & C. R. Co., *supra,* for the contract is not one made for the protection of a private right which it created, with an incidental partial and reasonable restraint of trade, but is one made between common carriers without limit as to time, and with the direct purpose to restrain trade and create a monopoly, detrimental to the public good, in favor of each of the contracting parties which, if enforced, it would necessarily do. It, therefore follows that in adjudging it void the circuit court did not err.

If correct in this view it further follows that the circuit court did not err in refusing to rescind the contract or to award appellants damages for its breach by appellees, for it is a well-recognized rule that the courts will not grant relief to the parties to an illegal contract or allow a recovery of damages by either against the other for its breach. The contract being against public policy and the parties in *pari delicto,* no right of action can be predicated thereon by either of them. They will be left by the court where their own conduct placed them. Ratcliff v. Smith, 76 Ky., 172; C. & O. Ry. Co. v. Maysville Brick Co., 132 Ky., 643; Hancock v. Railroad Co., 145 U. S., 416; Harriman, etc. v. Northern Sec. Co., 197 U. S., 244.

Judgment affirmed.