## Poll v. Patterson.

(Decided November 27, 1917.)

### Appeal from Hardin Circuit Court.

1. Trial—Instructions.—Where neither express testimony nor reasonable and legitimate inferences to be drawn therefrom would authorize a verdict, it is the duty of the court to so instruct the jury and direct it to return a verdict in conformity to the facts as established by the proof.

2. Trial—Evidence—Scintilla Rule. — While the scintilla rule is recognized within this jurisdiction, still its application is not to be given the effect of dispensing with the requirement that there should be some evidence, even though it be slight, and by evidence, within this rule, is meant something of substance and relevant consequence, and not vague, uncertain or irrelevant matter not carrying the quality of proof or having fitness to induce conviction.

L. A. FAUREST and GILBERT BURNETT for appellant.

G. K. HOLBERT and H. L. JAMES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On April 29, 1916, the appellee (plaintiff below) was traveling in a buggy drawn by a mule over the Leitchfield pike, in Hardin county, Kentucky, on his way home from Elizabethtown, when, about 3:20 o'clock in the afternoon, he met an automobile, which, as he contends, through the negligence of the driver thereof, frightened his mule and caused it to run up a bank by the side of the road, turn-

ing his buggy over and throwing plaintiff to the ground, resulting in some slight injuries, to recover for which he filed this suit assessing his damages at $10,000.00. The jury that tried the case, thinking that amount excessive, reduced it $9,500.00, and returned a verdict in plaintiff's favor for the sum of $500.00, upon which judgment was rendered, and to reverse it the appellant, who was defendant below, prosecutes this appeal.

The answer put in issue all of the allegations of the petition, making the specific denial that defendant's machine was the one which caused the injury. An additional plea of contributory negligence was relied upon, which was denied, thus making up the issues.

Four grounds for a reversal are urged before us, they being (1) that the court should have sustained the defendant's motion for a peremptory instruction directing the jury to return a verdict in his favor; (2) that the verdict is flagrantly against the evidence, and is excessive; (3) erroneous instructions given to the jury; and (4) incompetent evidence admitted over the objections of the defendant. According to the view which we take of the case, as presented by the record, we do not deem it necessary to consider any of the alleged errors except the first one, which we will discuss as briefly as possible.

The plaintiff says in his testimony that he left Elizabethtown for his home, which is located on the Leitchfield pike, at about three o'clock on the afternoon in question. That he lives about four miles from Elizabethtown, and that the accident occurred about two hundred yards from his house. He did not know any of the parties in the guilty machine, nor did he know what make of machine it was, but that it was a big car, and running, as he says, about forty miles per hour. There was no collision, but only a frightening of plaintiff's mule. His mother-in-law, who was on the porch at plaintiff's house just before the accident, saw a large machine pass going in the direction of Elizabethtown, traveling at a very rapid rate of speed, but she knew none of the parties in it, nor the make of the car, but described it in a manner indicating that it was a Franklin car.

A young lady living upon the pike about a mile beyond plaintiff's residence testified that she saw a machine pass her house going in the direction of Elizabethtown about three o'clock that afternoon, but she did not know the make of the machine, to whom it belonged, or any of the parties in it; she said that machines of various types passed her home constantly, but she did not spe-

cifically remember any other passing about that time of
day going in the same direction. Within a short while
thereafter she saw the machine of Mr. H. L. James pass
going in the opposite direction.

Parker Robinson testified that he owns and operates
a store at Star Mills, on Nolin creek, close to which a
number of people were on that day fishing; that he has
a telephone in his store, and that on this particular day
there was a call over the telephone from Louisville for
some one of the fishing party, who was notified and an-
swered; that a little later a second call was made for the
same party, which was answered, and that directly after
the second telephone call a machine passed his store go-
ing in the direction of Elizabethtown, and as though it
had come from the camp or the location of the fishing
party; that at the second call of the telephone the de-
fendant, Ben Poll, came to his store with the person who
was wanted at the telephone, but he did not know who
was in the machine which directly thereafter passed his
store, going, as he supposed, to Elizabethtown, nor did
he know the number of people it contained. In his ex-
amination in chief this witness did not state the time of
day the matters about which he testified occurred, but
after the testimony for the defendant had been intro-
duced, he was recalled, and upon that point he testified
as follows:

"It must have been half past two when they left the
store, or as late as half past three; as I say, I never
noted the time, and that is all I know. Q. Mr. Robinson,
how do you recall the time? A. Why, I remember them
being in there, but, as I said just now, I do not know the
time, it is only guess; I suppose it was something like
half-past two or half-past three o'clock. Q. That is just
guess? A. I didn't look at my watch; just an idea. Q.
There was nothing impressed that on your mind to make
you remember it at the time? A. No."

The machine of Mr. H. L. James left Elizabethtown
about three o'clock the same afternoon, going to another
place on the same creek with passengers also going fish-
ing, and there were in it Mr. and Mrs. James and two
or three other parties, including the chauffeur. After
starting from Elizabethtown the James party discovered
that they had forgotten some fishing poles and went
back after them, and then resumed their journey. At the
foot of a hill on the Leitchfield pike, some two or three
miles out from Elizabethtown, they met a Franklin car,

and about ten minutes thereafter, about a mile or mile and a half beyond that, they discovered the plaintiff's overturned buggy and subsequently saw him at his house. The chauffeur driving the James car recognized the one which he passed at the foot of Strickler's hill as a Franklin car, but he said there were two persons on the front seat; that he knew the defendant, but that he did not see him in that car. Mr. James was also acquainted with the defendant and he did not recognize any of the occupants of the car which he passed as being the defendant.

Between the Strickler hill and the place where the accident occurred there are two considerably traveled public roads entering into the Leitchfield pike, one known as the Bacon creek road, which comes into the pike from the left, going out from Elizabethtown, and the other the Cecilia road, entering the pike from the right, going in the same direction.

The Bacon creek road also leads to Star Mills, and it is about as near to travel it from that place to Elizabethtown as is the other route over the Leitchfield pike, it being necessary, whatever route is taken, to travel other roads to reach that pike, as it does not run to Star Mills.

The undisputed testimony for the defendant showed that he owned a five-passenger Franklin car; that he was at Star Mills with a fishing party on the day in question with two friends, a Mr. Vetter and a Mr. Myers. These three gentlemen lived in Louisville, and had been with the fishing party since the day before. Mr. J. T. Robey, who lives at Elizabethtown, was a member of the fishing party, and it was upon his invitation that the defendant and his two friends joined the party. They intended to remain longer, but a telephone message called Mr. Myers on an important business matter, and defendant and his friends were compelled to leave that afternoon.

The three gentlemen testify positively that they left Star Mills between one and one-thirty o'clock in the afternoon. Mr. Myers, on whose account the return trip was made, looked at his watch and said that it was but a few minutes of one-thirty when they left. Vetter was driving the car, and the only person on the front seat, Myers and the defendant occupying the rear seat. Mr. Robey also says that it was not past one-thirty when defendant's car left the fishing place for Elizabethtown.

The occupants of defendant's car were strangers in that community and did not know which road they trav-

eled on their return trip to Elizabethtown, *i. e.,* whether they traveled the Bacon creek road or another leading into the Leitchfield pike further away from Elizabethtown. They state that on the return trip they met no one driving a mule, nor did any accident such as plaintiff describes occur during that trip. They state that they met another car somewhat fitting the description of the James car, but that it was at a curve in the road and no one recognized either Mr. James or his chauffeur as occupants of the car, although defendant knew both; that the only travelers they met where there was any appearance of trouble were two men driving a sorrel horse which shied a little; that their machine was slowed up and the man passed on without any accident. They state that they arrived at Elizabethtown between two and two-thirty o'clock in the afternoon and continued their journey to Louisville.

Upon this evidence the court submitted to the jury the issues in the case, including that of defendant's car being the cause of the accident, with the result stated, and in this we think the court was in error.

The general rule, as stated in Jones on Evidence, page 198, is that "It is proper for the court to so instruct the jury when the evidence has been too loose and inconclusive to establish the facts sought to be proved without indulging in mere conjecture or speculation."

This rule is substantially approved in the case of C. & O. Ry. Co. v. Bagby, 155 Ky. 420, where the court, in announcing it, said:

"As was said in L. & N. R. R. Co. v. Wathen, 22 Ky. L. R. 82, 49 S. W. 185, a defendant's right should not be guessed away for one upon whom the burden rests to establish the cause of action against him.

"In Hughes v. The Cincinnati, &c., Railroad Co., 91 Ky. 526, we said that where the evidence is equally consistent with any one of two or more states of case upon which one may theorize as to the cause of the accident, it is not competent for the judge to leave the matter to the jury.

"The same doctrine is announced in Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky. 156, and in Hurt v. L. & N. R. R. Co., 116 Ky. 545.

"Acting under these primary rules which fix one's liability on the one hand, or excuse him on the other, the rule is that a peremptory instruction ought to be given for the defendant when, after admitting every fact shown

by plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case. Miller v. Metropolitan Life Ins. Co., 28 Ky. L. R. 225, 89 S. W. 183; Fugate v. City of Somerset, 97 Ky. 48; Southern Ry. Co. v. Goddard, 121 Ky. 577.''

Other cases in point are C., N. O. & T. P. Ry. Co. v. Sadieville Milling Co., 137 Ky. 568; L. & N. Ry. Co. v. Hamburg-Bremen Fire Insurance Co., 152 Ky. 570; Crump, et al. v. Chenault, 154 Ky. 187; L. H. & St. L. Ry. Co. v. Jolly's Admr., 28 Kv. L. R. 989; and Caldwell's Admr. v. C. & O. Ry. Co., 155 Ky. 609.

We are aware of the doctrine generally known as the scintilla rule, which is insisted upon by plaintiff's counsel here, but in the case of Crump v. Chenault, *supra*, this court, in discussing the question as to whether the evidence was sufficient to bring the case within that rule, the issue there being the existence or non-existence of undue influence, said:

''Nor does this conclusion conflict with the scintilla rule, for that rule requires some evidence, even though it be slight; and by evidence is meant something of substance and relevant consequence, and not vague, uncertain or irrelevant matter not carrying the quality of proof or having fitness to induce conviction. (Minnehan v. Grand Trunk, 138 Federal 37.)'' The court determined that there was not sufficient evidence in that case to authorize a submission of the issues to a jury.

The scintilla rule has never been given the effect of furnishing or supplying proof when there is none. Neither can it be permitted, nor was it intended by the law, through it, to elevate a mere chimerical probability to the dignity of proof. Its office, in jurisdictions where it is recognized, is to make effectual the quantum of proof necessary to create it, but not to supply proof when wanting. In other words, the law does not impute to it the ability to convert nothing into something.

The only fact in the instant case, if it be a fact, bearing even the semblance of testimony looking to the defendant as being the guilty party, is the testimony of Robinson, when he says in a way that the machine left Star Mills between two and three o'clock in the afternoon in question. As will be seen from the portion of his testimony copied herein, this is a mere conjecture or guess on his part. It is positively contradicted by the express statement of the three persons in the machine, as well as

the testimony of Mr. Robey, and furthermore contradicted by the fact that the parties passed through Elizabethtown on their way to Louisville between two and two-thirty that afternoon, which would render it impossible for them to have either left Star Mills at the time the witness Robinson places it with his guess or to have passed plaintiff on the Leitchfield pike at three-twenty o'clock, or at any other time after three o'clock, the time plaintiff left Elizabethtown.

Moreover, the machine of defendant was not so large as other witnesses describe the guilty one, nor were two persons riding upon its front seat, and it is entirely possible, even if the James party had recognized the machine which they passed as being that of defendant, that it could have come into the Leitchfield pike over the Bacon creek road between the place of the meeting and that of the accident.

We do not think that the testimony of the witness, Robinson, when we consider its uncertainty, is sufficient to overcome the positive testimony of four or five witnesses for the defendant upon the point as to the time when the trip from Star Mills to Elizabethtown was begun. All the testimony for plaintiff might be accepted as literally true, still it is more than equally probable that some machine other than defendant's was the guilty one, and in such cases, as will be seen from some of the authorities, *supra*, it is the duty of the court to instruct the jury to find for the defendant.

As will be found in the cases referred to, the jury is not permitted to guess away the rights of parties litigant, and when there is nothing more in the testimony than the basis for a pure guess or surmise, it is the duty of the court to take the case from the jury, as was asked in this case.

We are, therefore, of the opinion that the court erred in overruling the motion made by the defendant for a directed verdict in his favor.

This renders it unnecessary to consider other questions presented and argued.

Wherefore, the judgment is reversed, with directions to grant a new trial, and for proceedings consistent with this opinion.