# Cincinnati, New Orleans & Texas Pacific Railway Company et al. v. Gilreath's Administrator.

(Decided March 12, 1929.)

386

JOHN WELD PECK and TYE, SILER, GILLIS & SILER for appellants.

STEPHENS & STEELY for appellee.

Opinion of the Court by Judge Logan—Affirming.

The appellee instituted suit against the appellants to recover damages for the death of a two year old child killed by a freight train at a public crossing in McCreary county. The trial in the lower court resulted in a verdict and judgment against appellants for $3,000. This appeal is prosecuted, so we are told in the brief filed in behalf of appellants, on the sole ground that appellee failed to make out a case of liability against either of the appellants. The appellant Wilson Potter was the engineer on the train which ran over and killed the child, and he was sued jointly with the railroad company, and the verdict was against both of them.

The accident occurred on April 6, 1926, at a country road crossing about one mile north of Whitley City at a place called Marshes Siding. At the point where the accident happened, the railroad track runs nearly north and south. The train contained 42 cars and was traveling north. There is a slight curve in the tracks, and the wings of the railroad fence tended to prevent a clear view of the crossing and the road near the crossing; but it is substantially established by the proof that the track was almost straight for more than 2,300 feet, and that the crossing was visible for substantially that distance. The

parents of the child were keeping a store in a building facing the country road which was 81 feet from the crossing. The child was playing in the store and had left the store without the knowledge of its parents a very short time before the accident. It wandered onto the track at the crossing, and some of the witnesses testified that it was crawling on its all fours, while other witnesses saw it when it was sitting near the west rail, but between the rails.

The lower court eliminated every issue except whether those in charge of the train discovered the peril of the child on the track in time to have avoided the injury by the exercise of ordinary care on their part. It is not necessary to determine whether the lower court was in error in thus restricting the issues, unless it should be necessary to reverse the cause. We find this statement in the brief filed on behalf of appellants: "We insist that this case should be reversed because the evidence on behalf of the plaintiff was not sufficient to take the case to the jury; and, even if sufficient to authorize a submission to the jury, that the evidence is not sufficient to sustain the verdict and judgment. If it cannot be reversed on these grounds, we do not ask for a reversal on any other ground, and we waive all other grounds of reversal."

This leaves nothing for our consideration other than the proof.

The trainmen all testified that, upon the discovery of the child on the railroad track, the alarm whistle was blown, and all the brakes on the train were immediately applied to their full capacity, and the train was stopped as soon as it was humanly possible to stop it, but not in time to prevent the death of the child. There seems to be no evidence in the record that the train could have been stopped sooner by the application of the instrumentalities used for that purpose.

It is argued by counsel for appellants that the only evidence showing, or tending to show, the failure to exercise ordinary care to prevent the injury of the child after the discovery of its peril, is the proof of statements made by the appellant Potter, immediately after the death of the child and at the place of the accident. Three witnesses testified concerning statements made by the engineer. One was the father of the child, who is the administrator of its estate, and one of the two beneficiaries entitled to participate in the recovery; another was

Charles Lyons, a convict confined in the state penitentiary; and another was Oscar Bell, who at one time had been an employe of the railroad company, but who was not employed at the time he testified. Gilreath testified that within three or four minutes after the accident the engineer came back to the place where the child was struck, and while he (Gilreath) was holding the bleeding form of his child in his arms, the engineer said to him that he saw the child when he was back up at the signals, and could have stopped, but he thought it would go on across the crossing. He also testified that the engineer said the child was on the crossing when he saw it. He stated that some one asked the engineer why he did not blow the whistle, and the engineer replied that if he "blowed the whistle it would frighten the child," or words to that effect. Charles Lyons testified that at the same time and place he heard the engineer say he could have stopped, but he thought the baby would go on across the track. The testimony of Oscar Bell related to a conversation with the engineer a day or two after the accident. His statement was that he heard the engineer say substantially that which was testified to by Gilreath and Lyons. The testimony of Bell was incompetent as against the railroad company, but was competent as against the engineer.

When a statement is made at a place removed from the accident and some time thereafter, that is, after the mind has returned to its normal state, it cannot be regarded as a part of the res gestae. Cincinnati, N. O. & T. P. R. Co. v. Martin, 146 Ky. 260, 142 S. W. 410; Bevins' Administrator v. Chesapeake & O. R. Co., 190 Ky. 501, 227 S. W. 794. Evidence of statements made by an agent, not a part of the res gestae and which were made after the transaction is over, is not competent against his principal. Vicksburg & Meridian R. Co. v. O'Brien, 119 U. S. 99, 7 S. Ct. 118, 172, 30 L. Ed. 299.

The trial court excluded all of the evidence of the plaintiff, R. M. Gilreath, concerning the alleged statements of the engineer from the consideration of the jury. Evidently the court so ruled because of the opinions of this court in the cases of Louisville & N. R. Co. v. Rowland's Administrator, 215 Ky. 663, 286 S. W. 929; Combs v. Roark, Administrator, 206 Ky. 454, 267 S. W. 210. The evidence of Gilreath, Lyons, and Bell is attacked with vigor by counsel for appellants because of proof in the record showing that the engineer did not leave his engine

and go to the place where the child was struck, and because of the evidence tending to show that Charles Lyons was not present. While the evidence is rather strong tending to show that the engineer did not leave his engine, yet it was a question for the jury to determine whether he did so. It was also a question for the jury to determine from the evidence whether Charles Lyons was present and whether the evidence he gave was true. We not only have the statement of the witnesses who testified that the engineer said, at the place and time of the accident, that he could have stopped the train in time to have prevented the death of the child as tending to show negligence, but there were other witnesses who testified that the train gave three or four short blasts some 200 feet or more away from the crossing and did not give any other signal. If the blasts of the whistle had been continued as the trainmen claimed they were, the child might have been frightened from the track. It was a question for the jury to determine whether the trainmen gave only three or four blasts of the whistle or whether the blasts were continued up to the crossing. There was also evidence that the view of the crossing was unobstructed for more than one-third of a mile, and at least two of the trainmen testified that they were looking ahead, and the jury may have reached the conclusion that if these trainmen were looking ahead they must have seen the peril of the child. There was also testimony that the steam was shut off at the cattle guard, which was some distance further south than the point where the alarm signals were given, and that after shutting off the steam it was turned on again. The jury may have considered this evidence as corroborating the proven statement of the engineer that he saw the child but thought it would cross the track before its life was endangered. At least, it tends to show that the steam was cut off for some reason or other and then turned on again before the alarm signals were given. The evidence is not very strong showing, or tending to show, that the trainmen did not exercise ordinary care to prevent the injury after discovering the peril of the child; but there was evidence amounting to more than a mere speculative possibility that they did not do so. It was evidence of substance and relevant consequence tending to induce conviction and having the quality of proof. Such evidence measures up to the principle defining what is meant by the scintilla rule in the cases of Wigginton's Ex'r v. Wigginton, 194 Ky. 385, 239 S. W. 455; Lang-

ford's Executor v. Miles, 189 Ky. 515, 225 S. W. 246; Poll v. Patterson, 178 Ky. 22, 198 S. W. 567. The evidence in this case tending to show negligence after the discovery of the peril of the child amounts to more than a conjecture or suspicion.

It is contended by counsel for appellants in their brief that the testimony of Lyons and Gilreath, as to the alleged statements of the engineer, is so unreasonable and at variance with direct evidence in the case as not to constitute something of substance carrying the quality of proof or having fitness to induce conviction, and for that reason was not sufficient to authorize a submission of the case to the jury. We cannot agree with their contention. The statements of Potter, if made, are not unreasonable, although they are at variance with testimony of other witnesses. A mere variance with the testimony of other witnesses does not of itself render the statements unreasonable. It may be that he discovered the peril of the child in time to have avoided the accident, but relied upon his judgment that the child would get off of the track before the train reached the crossing.

On the whole case, we have reached the conclusion that there was sufficient evidence to support the verdict of the jury.

Judgment affirmed.