# Gess et al. v. Wilder.

(Decided March 10, 1931.)

TYE, SILER, GILLIS & SILER for appellants.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

A Ford coupe owned and driven by Vincent C. Wilder collided with a truck owned by the Lexington-Hazard Express Company and driven by William Gess. Wilder was injured, and his coupe was damaged, as was also the truck. In this action for damages based on several grounds of negligence Gess and the Lexington-Hazard Express Company denied the allegations of the petition, pleaded negligence on the part of Wilder, and the express company counterclaimed for damages in the sum of $100. The jury returned a verdict in Wilder's favor for $1,500, and the defendants appeal.

The accident happened on Dixie highway No. 25. Wilder was going to Mt. Vernon. The truck was en route to London. The body of the truck extended some distance over the chassis. Wilder's account of the accident is as follows: The road was straight at the place of the accident. He saw the lights of the truck for some distance away. He noticed that the truck was taking his side of the road. He got further to the right, and thought he was clear of the headlights and fenders. As he passed the headlights and the cab of the truck, the top edge of the car struck the truck. The truck had ordinary headlights and one little light that looked like a homemade reflector. It was on the body of the truck above the cab, and cast a reflection in the center of the truck. There were no lights on the corners, top, or bottom. He could not get over any further to the right, as there was a ditch. At the time of the accident, he was going about 16 miles an hour, and the truck was going 30 or 35 miles an hour. In addition to describing his injuries, he fixed the fair market value of his car before the accident at $400 and at $75 after the accident.

On the other hand, Gess, the driver, testified as follows: He had started from Lexington and was on his way to Harlan. The accident happened about 7 o'clock in the evening. The collision occurred on the Hairpin curve, and there was a little curve at the place of accident. He saw the lights of Wilder's car before he came

around the curve. At that time he was on his side of the road, which was 18 feet wide. The truck was 8 feet wide from corner to corner. When Wilder came around the curve, he came as straight to the corner of the truck as he could come. At that time he was on the right-hand side of the center of the road, and there was plenty of room for Wilder to pass on the other side. As he saw the lights of Wilder's car approaching, he blew his horn. Fastened on the top of the bus was a big light to advertise the company. This light showed from one side of the truck to the other. There was red reflectable glass on the corner of the truck where Wilder's car struck. When a light comes towards it, it is thrown on it; it is just the same as if a light were there. The truck also had a rear light, a dashlight, and two good headlights. The headlights enabled you to see ahead at least 250 feet. At the time of the accident he was slowing up to make the bend, and was running only 15 or 18 miles an hour. After the accident, Wilder said, "You haven't got any light on there to show that it is a truck." He replied, "I absolutely have." Wilder then saw the light burning and said, "You have." After walking around the truck, Wilder said, "I don't see how it could be my fault, and don't see how it could be yours." At the time of the accident the truck was overloaded.

The first ground urged for reversal is that the venue of the action was not properly laid. Under section 73, Civil Code of Practice, an action against a carrier for injury to a passenger or other person, or his property, must be brought in the county in which the defendant or either of several defendants resides, or in which the plaintiff or his property is injured, or in which he resides, if he reside in a county into which the carrier passes. As Wilder lives in Whitley county, and the express company passes through that county, the right to sue in that county turns on whether the express company is a common carrier. At the time of the accident, the express company was not hauling goods for itself, or for any particular persons, but was engaged in the business of transporting from place to place and for hire the goods of such of the public as saw fit to employ it, and was therefore a common carrier. Robertson & Co. v. Kennedy, 2 Dana, 430, 26 Am. Dec. 466; Farley v. Lavary, 107 Ky. 523, 54 S. W. 840, 21 Ky. Law Rep. 1252, 47 L. R. A. 383; Caye v. Pool's Assignee, 108 Ky. 124, 55 S. W. 887, 21 Ky. Law Rep. 1600, 49 L. R. A. 251, 94

Am. St. Rep. 348; Fields et al. v. Holland & Son, 158 Ky. 544, 165 S. W. 699, L. R. A. 1915C, 865. It follows that the plea in abatement was properly overruled.

By instruction No. 1 the court told the jury that, in addition to other duties therein enumerated, it was the duty of the express company to have the truck equipped with at least two lights in front of sufficient power to clearly reveal the bulk of the truck and its bed at least 200 feet ahead. The language of the statute is: "Shall have at least two lighted lamps in front, showing white, or tinted other than red light, and of sufficient power to clearly reveal substantial objects at least two hundred feet ahead." Kentucky Statutes, sec. 2739g-24. It is at once apparent that the instruction imposes a duty not required by the statute and is therefore erroneous.

While on the subject of instructions, it is proper to add the following: There is no evidence that the accident was due to the excessive speed of either the truck or the coupe, or to insufficient lights on either machine, or to the failure of either driver to sound his horn. On the contrary, the evidence clearly shows that each of the drivers saw the other machine when some distance away, and that the sole cause of the accident was the failure of one or the other to have his machine on the right side of the center of the road in the direction in which he was going, or his failure to use ordinary care to avoid coming in contact with the other. That being true, the court on another trial will submit these issues to the jury by appropriate instructions.

The second paragraph of the petition alleged that the coupe was destroyed, and fixed the damages at $500. It did not allege any negligence on the part of the defendants, or incorporate the allegations of negligence contained in the first paragraph of the petition. Since the judgment must be reversed for other errors and plaintiff may amend on the return of the case, we refrain from deciding whether the defect was cured by the verdict.

Though the damage to plaintiff's car was fixed in the petition at $500, the highest amount of damage proved was $375. In the circumstances the damages which the jury was authorized to assess should have been limited to $375, the amount proved, and it was error to authorize a finding in excess of that sum. Georgia, Southern & Florida Railway Co. et al. v. Makeever, 228 Ky. 492, 15 S. W. (2d) 293.

834

In the event the jury found for the express company on its counterclaim, the court told the jury to find "such a sum in damages as you may believe from the evidence will fairly and reasonably compensate it for the property damages, if any." The instruction is erroneous in that it sets no standard for the jury. Southern Ry. in Kentucky v. Kentucky Grocery Co., 166 Ky. 94, 178 S. W. 1162. The proper measure of damages is the difference between the market price of the truck immediately before and after the accident, and such should have been the instruction of the court. Big Sandy & K. R. Railway Co. v. Blair, 224 Ky. 367, 6 S. W. (2d) 453.

A witness testified that he had a conversation with Gess about a week after the accident and Gess stated that he did not know whose fault it was. The statement, being an admission by Gess, was admissible against him, but, having been made a week after the accident, and not being a part of the res gestae, it was not admissible against his principal, the Lexington-Hazard Express Company. Cincinnati, N. O. & T. P. R. Co. v. Gilreath's Adm'r, 228 Ky. 385, 15 S. W. (2d) 267. On another trial, if there be an objection to this evidence by the express company, accompanied by a request for an admonition by the court, the court will tell the jury that the evidence is admissible against Gess, but not admissible against the express company, and should not be considered in determining the company's liability.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.