## Chesapeake & O. Ry. Co. et al. v. Boyd's Adm'r.

Feb. 17, 1942.

As Modified on Denial of Rehearing March 27, 1942.

LeWright Browning for appellants.

Lilly & Lilly and Martin & Smith for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The judgment in this case is for $7,500 for the death of Elmer Boyd, who was killed by a train near but within the east limits of Catlettsburg on April 6, 1940. The ap-

pellants, C. & O. Railway Company and its engineer, argue that the evidence did not authorize an instruction on their primary negligence and that there should have been submitted to the jury only the issues of contributory negligence and discovered peril, actual or constructive. Criticism of the form of the instructions is also made.

The deceased was 11½ years old. It is conceded the general use of the right of way constituted him a licensee. There are three tracks paralleling and adjacent to an alley, without a fence or barrier between. Next to the alley is a spur track, then the westbound and the eastbound main tracks. The boy and three companions had gone into the alley from the rear of a lot where they had been to sell some junk. One of the other boys was 12 and the other two 13 years old. They were walking in the alley, one of them pushing a little cart. Elmer Boyd was walking on the end of the cross ties of the spur track. He had an old automobile tube wrapped over his head and ears. All the boys were watching and talking about a ball game being played by other children in a lot on the far side of 36th Street, which crossed their pathway. The spur track veered away from the alley to its connection with the main line. Elmer continued along the end of the ties and a train came up back of him. He was struck by the end of a beam across the front of the engine and died a few hours later of his injuries.

The point of the accident was 50 feet east of 36th Street. It is conceded the evidence was contradictory as to whether or not the whistle had been blown before this point was reached. Appellants' argument is that the case comes within the rule that there can be no recovery of damages of a railroad company because of negligent failure to give warning signals or to maintain a lookout where the injured person knew or was bound to have known of the approach of the train. Louisville & N. Railroad Co. v. Shaw's Admr'x, 264 Ky. 321, 94 S. W. (2d) 642; Chesapeake & O. Railway Co. v. Bryant's Adm'r, 272 Ky. 339, 114 S. W. (2d) 89; Louisville & N. Railroad Co. v. Mitchell's Admr'x, 276 Ky. 671, 124 S. W. (2d) 1025; Id., 285 Ky. 576, 148 S. W. (2d) 1048. We do not regard the evidence as conclusively proving the boy knew the train was coming up behind him. It is true a number of witnesses who were along the tracks testified they knew of the approaching train. One of the boys, Billy Adkins, stated he heard the train whistle five times,

and located the exact place of three of the instances. Just as the boys came into the alley he said: "Elmer, here comes a train." This was apparently before he got over on the end of the ties. Another one, Billy Maynard, testified he heard the whistle blow twice. After the boys had started walking toward 36th Street he told Elmer about the train coming. Each of these boys had signed a statement for attorneys for the plaintiff shortly after the accident. The statements recited the boys had read and understood them, and on the witness stand they admitted doing so. Billy Adkins' statement was that he had heard the train whistle for the 38th Street crossing and again, what was apparently the emergency alarm just before the engine struck Elmer, but that he did not look to see where the train was; also that Billy Maynard "didn't say anything to Elmer about hearing any whistle or didn't say anything to Elmer about the train and Elmer didn't seem to know the train was coming." On the witness stand he stated on cross-examination that he heard the train whistle once but did not look to see where it was and that he had not said anything to Elmer about it coming. He added: "Elmer didn't seem to know the train was coming." Both boys testified the statements they had signed were correct, and yet they modified them in their testimony as above indicated. The third boy, Chalmers Lycans, who was pushing the cart in the alley and was farthest away from Elmer, testified he heard the train whistle once but did not see it strike Elmer. He was watching the ball game. However, he heard Billy Maynard tell Elmer, "Here comes the train." His written statement contains nothing about this. There is nothing to indicate that these statements were unfairly obtained. It appears that they had also given statements to representatives of the railroad company, but they were not presented on the trial.

The testimony of these boys is not to be discredited merely because of their youth (Bright v. Commonwealth, 120 Ky. 298, 86 S. W. 527, 117 Am. St. Rep. 590), for often the consistent and unshaken testimony of a child is entitled to a high degree of credit. However, under some psychological inspiration there is a tendency prevalent, even among adults, to relate or describe something as having occurred on an exciting occasion which the passing of time leads to believe did occur in fact. Sometimes a witness, with the best of intentions, introduces into the occurrence a theory of his own. In this case

these immature witnesses are shown to have made inconsistent statements soon after the tragedy and some weakness in their direct testimony was developed in the cross examinations. Moreover, it is likely had they known the train was coming and their playmate was in danger, their warning would have been a shout and exciting exclamation instead of the mild statement to him that a train was coming. The impeachment of their testimony —without any implication of deliberate falsehood, as we have indicated—would have justified the jury in rejecting it. Over against this weakened evidence is the fact that the unfortunate boy had his ears covered and made no response either by word or act to any warning, which indicates that he had heard none. What is much more important, he proceeded apparently with his mind on the ball game in complete oblivion of the on-coming train. The utter unnaturalness of deliberately walking in front of the train affords probative evidence that he was not aware of its approach. This recitation with the deductions are made merely to show that the jury had a basis for believing that the boy had no independent knowledge of the train's approach, hence that there was a duty resting upon the railroad company and its engineer to give him warning. Had the jury returned a verdict for the defendants, we do not think it could be seriously contended that on the point of their negligence in this respect there had been no evidence to sustain the verdict. To hold the boy knew of the train's approach so as to relieve the defendants of responsibility for a failure to sound a warning would be the equivalent of holding the boy guilty of contributory negligence as a matter of law. In the many cases in which the rule contended for was applied—that failure to give warning was immaterial as a matter of law—the person killed or injured had said something or done something that conclusively showed he knew the train was approaching and had risked the chance of crossing in front of it in safety; or as said in Louisville & N. Railroad Co. v. Brock's Adm'r, 281 Ky. 240, 135 S. W. (2d) 898, the circumstances were such that it was apparently impossible for him not to have known that the train was coming toward him and was but a short distance away. We are of opinion, therefore, it was proper for the court to predicate the defendants' responsibility upon their primary negligence in respect to the warning.

The first instruction advised the jury that it was the

defendants' duty to give reasonable and timely warning by the ringing of the bell or the blowing of the whistle and to keep a lookout for the presence of persons upon the tracks for the purpose of avoiding injuring them. This is criticized as erroneously imposing absolute duties to do the things enumerated. It is maintained that the defendants' duty was to exercise ordinary care to perform such duties. The giving of reasonable warning is, under many decisions of this court, the exercise of ordinary care. If the appellants were right, the result would be in effect to advise the jury that the defendants' duty was to exercise ordinary care to exercise ordinary care; or, to state it another way, to exercise ordinary care not to be negligent. The instruction followed closely that approved for the first time in Louisville & N. Railroad Co. v. Cook, Ky., 128 S. W. 81, and many times thereafter. Hobson, etc., on Instructions to Juries, Section 518; Stanley on Instructions to Juries, Section 656.

The defendants offered Instruction "B," which submitted the right of the trainmen, if they saw the boy where he was not in danger, to assume that he would not leave a place of safety and put himself in peril but would keep out of danger. The given instruction on this point was that if the trainmen were giving reasonable and timely notice, and if at the time the boy was walking along the side track where he was in no danger and the trainmen saw him there, they could assume he would not walk in the path of the train. This is criticized as being predicated upon proper signals having been given. The argument seems to be rested upon the hypothesis already disposed of, namely, that the failure to give warning was immaterial because of the knowledge of the decedent that the train was approaching near by, as well as the hypothesis that the trainmen had the right to assume the boy would not leave his place of safety. He was gradually approaching the main track by following the side track as it led to the switch, and the trainmen admitted seeing him when they were 160 feet away. The facts are like those in Cornett's Adm'r v. Louisville & N. R. Co., 233 Ky. 797, 26 S. W. (2d) 1031, where attention is directed to a difference when the pedestrian suddenly leaves a safe place and steps in front of the train. This distinguishes Young v. Louisville & N. R. Co., 228 Ky. 771, 15 S. W. (2d) 1001, cited by appellant and answers the argument that the right of assumption relates to primary negligence and not secondary negligence resting

on the humanitarian doctrine of last clear chance. The defense here contended for was presented in the instruction on discovered peril, or secondary negligence and it seems to us that was sufficient. The given instruction, like the first one, follows that approved in Louisville & N. Railroad Co. v. Cook, supra.

The instruction on discovered peril is as follows:

"The court instructs the jury if they shall believe from the evidence that plaintiff's decedent received warning of the approach of the train when at a safe distance from the track then plaintiff is not entitled to recover and the jury will find for the defendants unless they shall believe from the evidence that after those in charge of the defendant company's engine saw, or by the exercise of ordinary care could have seen that the decedent was so near to the track on which the train was running as to render his position dangerous or perilous, they failed to use ordinary care to avoid striking him, and if the jury so believe from the evidence they will find for the plaintiff.

"In determining whether those in charge of the engine did or did not use ordinary care within the meaning of this instruction the jury will consider the time within which they had to act and all the circumstances of the situation."

The criticism of this instruction is based upon the hypothesis which we have held to be unwarranted. It seems to us the instruction is correct and more favorable to the defendants than some instructions of that character which have been approved by this court.

A witness testified that while she and others were at the scene of the accident the engineer "came back" and said he had "hollered at the boy," and asked her if she heard him, and she replied that she had not. It was developed that the engineer's statement was made when the witness charged him with not having blown the whistle or rung the bell. The defendants objected generally to the admission of the engineer's statement. It is submitted the admission of the evidence was prejudicial error. Waiving the question as to whether it was admissible as res gestae, since the engineer was a party defendant, it is apparent that the evidence was competent against him as an admission of negligence. The gen-

eral objection without a request that the court limit the evidence was not sufficient to require its exclusion. Louisville & N. Railroad Co. v. Scott's Adm'r, 188 Ky. 99, 220 S. W. 1066; Cincinnati, N. O. & T. P. R. Co. v. Gilreath's Adm'r, 228 Ky. 385, 15 S. W. (2d) 267; Gess v. Wilder, 237 Ky. 830, 36 S. W. (2d) 617.

The judgment is affirmed.