## General Exchange Ins. Corporation v. McIntosh.

Jan. 11, 1944.

William Mellor, Eugene B. Cochran, Bullitt & Middleton and E. B. Rose for appellant.

H. L. Rudd and L. Allen for appellee.

338

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This appeal is from a judgment in favor of Charlie McIntosh on a fire insurance policy covering a motor truck, after a demurrer had been sustained to the Insurance Corporation's plea of cancellation. The Corporation relies solely upon this plea for reversal.

McIntosh purchased a truck on February 12, 1941. He paid a part of the purchase price and gave the General Motors Acceptance Corporation, hereinafter called the Finance Company, a mortgage secured by the truck for the balance. The Finance Company required McIntosh to have the truck insured, and on the day the truck was purchased the General Exchange Insurance Corporation issued the policy upon which McIntosh brought his suit, with him and the Finance Company as joint insureds. The Finance Company paid the insurance premium to August 12, 1942, and the amount of the premium was included in the mortgage note which McIntosh gave the Finance Company. McIntosh was to pay $28.83 to the Finance Company on the 12th of each month to and including August 12, 1942. On April 14, 1942, McIntosh wrote the following letter to the Finance Company, which it received on April 15th: "General Motors:

"Gentlemen:

"I still owe you ($112.85) one hundred twelve dollars and eighty-five cents. How much will you deduct if I finish payment in full with next payment.

"Sincerely yours,
"Charlie McIntosh."

On April 15th, the Finance Company informed the Insurance Corporation of the letter from McIntosh and advised that cancellation of the policy might be requested by the joint insureds on or before the date of expiration. The Insurance Company advised the Finance Company that, if cancellation was requested on or before May 12th, the policy would be cancelled as of that date, and a return premium of $9.10 would be paid to the Finance Company, that being the amount of the premium covering the period from May 12th to August 12th. The Insurance Company authorized the Finance Company to receive from McIntosh any request for cancellation of the policy, and agreed that it

would be cancelled as of that date if McIntosh so requested on or before that date. On April 17th, the Finance Company sent McIntosh the following letter:

"Dear Mr. McIntosh:

"In response to your recent request, you are correct in stating that your present unpaid balance is $112.85, and should you desire to liquidate your account in full and forward us your insurance policy for cancellation not later than May 12th, the net amount to conclude will be $102.26. If you wish to continue with your insurance coverage and keep your policy the net balance necessary will be $111.36 by this date.

"We much appreciate the excellent manner in which you have handled your account with GMAC and we trust that the above information is what you desire.

"Very truly yours,
"OWD/EB            Credit Department."

On May 12th, the Finance Company received through the mail from McIntosh, with no explanatory comment, a check payable to it in the amount of $102.26. The insurance policy did not accompany the check. When the Finance Company received the check it credited it to the note and then obtained from the Insurance Company the return premium of $9.10 which was also credited on the note, thereby paying it in full. The credit of $1.49 which the Finance Company gave McIntosh represented the interest on the payments which would have been payable between May 12th and August 12th. The Insurance Corporation's amended and substitute answer also contained the allegations that it was at all times the intention of the parties that the policy be cancelled on May 12th, and it was cancelled by their agreement as of that date, and was not in force or effect thereafter. McIntosh's truck was destroyed by fire on May 16th. Thereafter he instituted this action on the insurance policy.

It is the contention of the appellant that the aforementioned facts and circumstances, admitted by the demurrer, show clearly there was complete agreement between it and the insureds, McIntosh and the Finance Company, to cancel the policy as of May 12th. We believe that position to be sound. It was McIntosh who desired to wind up his payments, as shown by his letter of April 12th, and that company's letter of April

17th to him told him in a clear and explicit manner how this could be done. He was told the amount he should send, in the event he desired to keep his insurance policy, and also the amount necessary in the event he desired to cancel the policy. It is clear that McIntosh received the letter and acted upon it, because it is beyond reason that otherwise he could have sent the exact amount necessary to liquidate his debt—$102.26 with the credit of $9.10 for the unearned insurance premium. As said in Integrity Mutual Casualty Company's Receiver v. T. W. Minton & Co., 238 Ky. 13, 36 S. W. (2d) 647, an insurance contract, like any other contract, may be cancelled by consent of the parties.

The mere fact that McIntosh kept the policy is of itself no indication that it had not been cancelled. Under its provisions he could have cancelled the policy at any time. This would have become effective upon receipt of his request; and upon his demand and surrender of the policy, the unearned premium refunded to him on the customary short rate basis. Gately-Haire Co. v. Niagara Fire Ins. Co. of New York, 221 N. Y. 162, 116 N. E. 1015, Ann. Cas. 1918C, 115. Both McIntosh and his joint insured requested that the policy be cancelled, and, as we have already indicated, there was a complete agreement between all the parties concerned as to the manner and time in which this should be done.

Under the circumstances, we think the judgment should be and it is reversed, with directions to set it aside, and for proceedings consistent with this opinion.