CASE 56—PETITION ORDINARY—DECEMBER 12.

## Anderson v. Jett, &c.

APPEAL FROM CARROLL CIRCUIT COURT.

COMBINATIONS TO PREVENT COMPETITION IN TRADE.—Any combination or agreement, the object of which is to destroy or interfere with free competition in any line of business, is void, whether or not in the particular instance it has the desired effect.

The owners of two steamboats, which were rivals as public carriers, entered into a written agreement by which it was provided that, in order to prevent the rivalry that then existed between said boats in the carrying business, each should thereafter share, in fixed propor-

| | |
|---|---|
| 89 | 375 |
| 91 | 343 |

| | |
|---|---|
| 89 | 375 |
| 106 | 879 |
| 106 | 889 |

| | |
|---|---|
| 89 | 375 |
| f123 | 183 |

| | |
|---|---|
| 89 | 375 |
| f133 | 177 |
| e133 | 805 |

| | |
|---|---|
| 89 | 375 |
| 138 | 551 |

tions, in the net profits of both, each boat to bear its own expenses; and in the event the owner of either boat should sell it with a view of going out of the trade, notice thereof should be given to the other owner, and the owner so selling should not come into the trade again within one year thereafter. One of the parties sold his boat with the view of going out of the trade, and gave proper notice of that fact. The other owner thereupon purchased another boat to take its place, and was running the two boats, when the owner who had sold his boat brought it into the trade again within a year from the time at which he had sold it. The owner who had remained in the trade brings this action to recover damages for breach of the contract. *Held*—That as the object of the contract was to destroy competition in trade, it was void, and, therefore, there can be no recovery.

MASTERSON & GAUNT FOR APPELLANT.

THOMAS J. McELRATH AND J. A. DONALDSON FOR APPELLEES.

No briefs in record.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The steamboats Blue Wing and Hornet were, prior to the fifteenth day of September, 1885, rivals in the freight and passenger trade on the Kentucky river; rather they were rivals as public carriers on said river. On the fifteenth day of September, 1885, the appellant, George W. Anderson, as the sole owner of the Blue Wing, and Silas P. Douthit, on behalf of the appellees and himself, as the controlling and managing owner of the Hornet, entered into a written agreement, by which it was agreed that, in order to prevent the rivalry that then existed between said boats in said carrying business, and the consequent reduction of freights and passenger charges below a fair compensation, the said boats should thereafter share in the net profits earned by each in the proportion of sixty-two and a half per cent. to the steamboat Hornet and thirty-seven and a half per cent. to the steam-

boat. Blue Wing; that each boat should bear its own running and other expenses, and in case the owner or owners of either boat should sell the same, such owner or owners should replace the same with another boat just as good, to be run and the net profits divided as before; or, if the owner or owners of either boat should sell it with a view of going out of the trade, notice thereof should be given to the owner or owners of the other boat; and the owner or owners so selling should not come into the trade again, either directly or indirectly, within one year thereafter; that the steamboat Hornet was sold by said Douthit with the view of going out of the trade; that he gave proper notice of that fact; that the appellant, by reason of said sale and notice, purchased the steamboat Kerr to take the place of the steamboat Hornet; that with the Kerr and Blue Wing the appellant was doing a thriving and profitable business, which was interrupted and destroyed by said Douthit, contrary to the agreement, bringing the Hornet into the trade again as a competitor for freight and passengers, which competition had the effect to destroy the appellant's profitable business, by which he was damaged, &c. The case is here on appeal from a judgment of the circuit court sustaining a demurrer to the appellant's petition and amended petition.

It is to be observed that the respective owners of these boats entered into no partnership in business; the property rights and responsibilities of the owner or owners of each boat remained as before the agreement was entered into; neither assumed any duty or obligation in reference to the other that he was not under before the agreement was entered into, except

that of pooling the net profits earned by each, and
dividing them in certain proportions; but neither
party was under any obligation to the other party to
run his boat for as much as a single day; neither
party was under any obligation to the other to keep
his boat well manned or in good and clean condition;
the only tie, common to both, was that of dividing
the net profits of each boat. There was a strong
stimulation to increase the net profits by means other
than that of popular favor springing out of efficient
steamboat facilities and close attention to the business
of shipping for reasonable charges and courteous at-
tention to passengers at reasonable fare; also, under
this agreement, there was no incentive for each boat to
run the trade, if one boat could, perchance, do all the
business, though only "after a sort." It was to the
interest of each for the other to lie up, thereby saving
expenses and increasing the net profits; and another
feature detrimental to the public interest, consisting in
the fact that they were not only deprived of frequent
means of shipments and passenger travel, but subjected
to extortionate charges. Why so? Because there is
no competition in the trade, nor likely to be any; for,
by this combination, there lies another boat at the
wharf ready, according to the written obligation, to
appear in the trade and cut the prices of freights and
passage below living prices as long as such competi-
tion could hold out. It is the competition, or fear of
competition, that makes these carriers efficient, atten-
tive, polite and reasonable in charges; remove the com-
petition, or the fear of it, and they become extortionate,
inattentive, impolite and negligent. The writing sued

on by the appellant tended to inspire just such state of case. It is said that neither was bound to charge the same as the other. That is true; but either could extort with impunity, and the other would be an equal recipient of the fruit of the extortion; there would be no motive power—rivalry in trade—to circumvent the extortion; on the contrary, self-interest would prompt, not only the encouragement of the extortion, but an imitation of the nefarious example. It is true that their contract did not, in so many words, bind them to any given charges; but it made it to the interest of each, not only to charge, but to encourage and sustain the other in charges that would amount to confiscation. The facts alleged in the petition—doubtless stated as modestly as the draughtsman could—show that the combination was exceedingly profitable and entirely unfriendly to free and untrammeled competition. This combination was more than that of a combination not to take freight or passengers at less than certain prices. In such case, the combiners have to furnish adequate means of transportation and efficient and polite officers, and confine themselves as nearly as possible to the sum agreed upon, in order to secure the trade, or a reasonable portion of it; but here, by reason of the agreement, there is no incentive to competition; inefficient means of transportation, unskilled or inattentive officials, are no drawback to either boat; its share of the profits come notwithstanding.

The coal merchant whose only means of transportation is by the Kentucky river may not be able, if compelled to pay exorbitant freight charges, to compete with his rivals in business who have other

means of transportation; or if such competition should not exist, the consumers of his coal would be taxed with these charges; and, more pitiable than all the rest, would be the condition of the agriculturist, whose only means of transportation would be by said river. Rivalry is the life of trade; the thrift and welfare of the people depend upon it; monopoly is opposed to it all along the line; the accumulation of wealth out of the brow sweat of honest toilers by means of combinations is opposed to competing trade and enterprise. That public policy that encourages fair dealing, honest thrift and enterprise among all the citizens of the Commonwealth, and is opposed to monopolies and combinations because unfriendly to such fair dealing, thrift and enterprise, declares all combinations whose object is to destroy or impede free competition between the several lines of business engaged in, utterly void. The combination or agreement, whether or not in the particular instance it has the desired effect, is void. The vice is in the combination or agreement. The practical evil effect of the combination only demonstrates its character; but if its object is to prevent or impede free and fair competition in trade, and may, in fact, have that tendency, it is void as being against public policy. For the foregoing reasons, the agreement is against public policy, and is, therefore, void.

The judgment is affirmed.