Case 23.—ACTION BY W. W. MEADOWS AGAINST J. F. CLEMENS TO ENFORCE A CONTRACT.—June 8.

## Clemons v. Meadows.

Appeal from Fulton Circuit Court.

R. J. BUGG, Circuit Judge.

Judgment for Plaintiff. Defendant appeals. Reversed.

Contracts—Illegality—Restraint of Trade—A contract between competing proprietors of hotels in a town, whereby one of them agreed to keep his hotel closed for three years, reserving the right to rent the same for offices and to roomers, and whereby the other agreed to pay a specified sum monthly to the former during the three years, is in restraint of trade and illegal, since a hotel is a quasi public institution, and an agreement by a proprietor not to perform a duty imposed on him by law is in contravention of public policy.

HERCSHEL T. SMITH and SHELBOURNE & KANE, Attys for appellant.:

(No brief in the record.)

ROBBINS, THOMAS & TYLER, ED THOMAS and HAZELRIGG, CHENAULT & HAZELRIGG for appellee.

### POINTS AND AUTHORITIES.

1. A contract not to engage in a particular business in a prescribed locality or not to engage in business at all for a reasonably limited time is not one in restraint of trade, but is lawful and permissible. (4 Bibb, 486; 7 J. J. Marshall, star page 368; 86 Ky., 156; 16 Ky. Law Reporter, 869; 21 Ky. Law Reporter, 1317.)

Clemons .v. Meadows.

2. The character of contract involved is not such as is denounced by section 3915 of the Kentucky Statutes.   (89 Kentucky Reports, 375; 4 American Reports, 513; 120 Federal Reporter, 415.)

3. The law regards the substance rather than the shadow or the garments.   (26 Ky. Law Reporter, 407, on page 408.)

4. Courts will construe contracts to be legal rather than illegal. (Brom's Legal Maxims, star page 550.)

5. The extent or adequacy of a consideration will not be inquired into.  26 Ky. Law Reporter, 231.)

OPINION BY JUDGE PAYNTER.—Reversing.

This action was instituted upon a writing which reads as follows: "This agreement entered into this 12th day of July, 1904, by and between W. W. Meadows, of the New Meadows Hotel, and Clemons & Wade Bros., of the Usona Hotel, both of Fulton, Ky., witnesseth: That for a period of three years from date hereof W. W. Meadows, who agrees to close and keep closed his hotel, known as the 'New Meadows Hotel,' reserving to himself the right to rent the same for offices of all kind and description, and also to all roomers for one week or more, when opportunity may occur. That for and in consideration of the aforesaid elimination of the New Meadows Hotel as a factor in the hotel situation for the time named, of Fulton, Ky., Clemons & Wade Bros. agree to pay in advance to W. W. Meadows one hundred dollars cash, and one hundred dollars additional on the 12th day of each succeeding month for three years from this date. It is agreed by both parties that, should any rush of patronage greater than the Usona Hotel can accommodate occur, W. W. Meadows agrees to entertain, for lodging only, any and all guests sent to him by Clemons & Wade Bros., and to receive therefor as compensation 50 per cent. of any revenue derived therefrom. It is further agreed that the price for said lodging shall never be less than $1 per person. However, it is agreed and understood that absence from home or any other good reason shall be suf-

ficient and good reason for W. W. Meadows declining to take such guest. All rooms occupied by guests at the New Meadows Hotel to be cared for by W. W. Meadows.''

The appellants claim that the contract is not enforceable, and that they cannot be required to pay the sums of money therein stipulated to be paid, because the contract is against public policy and without consideration. It is averred in the answer that at the time of the execution of the contract Fulton was a town of 5,000 inhabitants; that it was situated at the crossing of the Illinois Central Rialroad, running from Chicago to New Orleans and from Louisville to Memphis and New Orleans; that it was the headquarters of the Kentucky & Tennesse Division of the road, and a large number of local and transient persons stopped at the hotels for meals and lodging; that the New Meadows and Usona Hotels were firstclass hotels, and were the only hotels of that class in the town; that they were rivals and competitors; that there was no consideration for the execution of the contract, except that which is stipulated therein; that it was entered into between the parties for the purpose of removing competition that existed in the hotel business in Fulton, and for the purpose of giving the Usona Hotel a monopoly of the hotel business of its class; and that the contract is against public policy. The court sustained a demurrer to the answer, and, the appellants failing to plead further, judgment was rendered against them.

So far as we are aware, the exact question presented by this record has never been decided by this court. This court has upheld contracts which were in partial restraint of trade. Pyke v. Thomas, 4 Bibb, 486, 7 Am. Dec. 741; Grundy v. Edwards, 7 J. J. Marsh. 368, 23 Am. Dec. 409; Sutton v. Head, 86 Ky. 156, 9 Ky. L. R. 453, 5 S. W. 410, 9 Am. St. Rep. 274; Warehouse Co. v. Hobson, 29 S. W. 308, 16 Ky. Law Rep. 869. It was said in Sutton v. Head, ''Indeed, a par-

ticular trade may be permitted by being limited for a short period to a few persons, and the public benefited by preventing too many from engaging in the same calling at the same place. If, therefore, the limitation be a reasonable one, it will be upheld." Beach on Contracts, § 1575, announces the rule as follows: "The modern doctrine, is well-nigh universal that when one engaged in any occupation sells out his stock in trade and good will, or his professional practice, he may contract with the purchaser and bind himself not to engage in the same vocation in the same locality for a time named, and he may be enjoined from violating this contract. This is about as far as contracts in restraint of trade have been upheld by the American courts, or those of England. While the law, to a certain extent, tolerates contracts in restraint of trade or business, when made between vendor and purchaser and will uphold them, it does not treat them with any special indulgence."

The cases in which this and other courts have recognized this rule as correct, are where parties sell their business or trade, together with good will. For instance, cases where a merchant sells to his partner, or to a stranger, or where one being a professional man, with an established business as a physician or dentist, sells it, and as part of the consideration the vendor agrees not to engage in the business for a time, in that locality, and in such cases the courts have sustained such a contract, although they be in partial restraint of trade. Such contracts are intended to secure to the purchaser the good will of the trade or business, and as a guaranty the vendor agrees not to engage in like business or trade at that place for a specified time. In these cases the restraint to be valid must be more extensive than is reasonably necessary for the protection of the vendee, in the enjoyment of the business which he has purchased. In this class of cases the court recognizes that the vendor has received an equivalent for his agreement to par-

tially abstain from business at the place where his business was formerly conducted. In such cases the agreement does not contemplate that the business or trade purchased shall be discontinued and thus perhaps throw out of employment those whose services were necessary to carry on the business, but on the contrary, it is contemplated that the business will be carried on and that the public will continue to receive benefits which may accrue from the conduct of the business. It results that the agreement does not have the effect of depriving the public of any benefits which it has enjoyed from the conduct of the business, or pursuit of the trade which has been transferred to another. Such contracts do not have the effect of destroying the competition which existed by reason of which the public enjoyed benefits. From the answer it is perfectly manifest that the purpose of entering into the contract was to eliminate the New Meadows Hotel from the hotel business in Fulton, and prevent competition between it and the Usona Hotel conducted by the appellants, and to give to the latter a monopoly of the hotel business of the class to which these hotels belong. They were the only first-class hotels in town, and the effect of the contract was to enable the Usona Hotel to serve all the patrons whose tastes and financial condition induce them to stop at first-class hotels.

The question for our solution is: Is the contract against public policy and without consideration? Hotels are established and maintained for the purpose of serving the public. The opening of a hotel is an invitation to the public to become its guests. Hotels are not conducted for the social enjoyment of the owners, but for the convenience of the public, that is, those whose business or pleasure may render it necessary that they shall ask and receive food and shelter at a place of public entertainment for compensation. A hotel is a quasi public institution. Those who desire to conduct a hotel must first obtain

a license from the commonwealth allowing them to do
so. Laws have been enacted for the purpose of pro-
tecting the proprietors of hotels because of the public
character of the business. It is the duty of hotel pro-
prietors to receive guests of good character, well de-
meaned and who are free from any contagious or in-
fectious disease, and who have the financial ability to
pay the charges· When a hotel agrees not to perform
a duty imposed upon them by law, and agrees not to
serve the public with a view of giving a competitor in
business a monopoly of the hotel business, its act is in
contravention of a sound public policy. The contract
relied upon in this case is plainly in restraint of trade,
the only consideration being the payment of money
for such an agreement. No property is sold or good
will transferred. The business is destroyed, not con-
tinued for the benefit of the public. The laborers that
were necessary to run the hotel are thrown out of
employment, and the public is deprived of the benefits
which would accrue should the competition continue.
The contract was not for the purpose of protecting
the appellants in the legitimate use of something,
which they acquired by it, for, nothing was conveyed
to them. The purpose and effect of the contract was
to enable the appellants to enjoy an illegitimate use
of something which they already had. Our
conclusion is that the contract is against public
policy and the demurrer to the answer should
have been overruled. Chapin v. Brown (Iowa)
48 N. W. 1074, 12 L. R. A. 428, 32 Am. St. Rep. 297;
Clark v. Needham (Mich.) 51 L. R· A. 785, 84 Am. St.
Rep. 559; Tuscaloosa Ice Mfg. Co. v. Williams (Ala.)
28 South, 669, 50 L. R. A. 175, 85 Am. St. Rep. 125.
In Anderson v. Jett, 89 Ky. 375, 11 Ky. L. R. 570, 12 S.
W. 670, 6 L. R. A 390, this court well said: "Rivalry is
the life of trade. The thrift and welfare of the people
depend upon it. Monopoly is opposed to it all along
the line. The accumulation of wealth out of the brow
sweat of honest toilers, by means of combinations, is

opposed to competing trade and enterprise. That public policy that encourages fair dealing, honest thrift and enterprise among all the citizens of the commonwealth, and is opposed to monopolies and combinations because unfair to fair dealing, thrift and enterprise, declares all combinations whose object to destroy or impede free competition between the several lines of business engaged in, utterly void. The combination or agreement, whether or not in the particular instance it has the desired effect, is void. The vice is in the combination or agreement. The practical evil effect of the combination only demonstrates its character; but if its object is to prevent or impede free and fair competition in trade, and may, in fact, have that tendency, it is void as being against public policy."

The judgment is reversed for proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.