### GORDON v. SIMSON.

(Fourth Division. . Fairbanks.    January 28, 1922.)

No. 2545.

**Good Will ⬡⟶5—Contracts—Injunction.**

Plaintiff entered into a contract with Simson Bros., a co-partnership composed of Abraham Simson, and his brother, Benjamin, whereby he purchased a line of women's and children's wear, except boy's clothing, with a further agreement that, "in consideration of said purchase and the full performance of this agreement, the said Benjamin Simson and Abraham Simson, doing business as Simson Bros., and the said Alex Simson and Lipman Simson, who are interested in the proceeds of said business, but not owners of any part of the goods sold, hereby agree and bind themselves by this contract of sale, that each and all of them do sell to the said Gordon the good will of said business of Simson Bros., so far as it relates to dealing in dry goods and women's and children's wear, except boy's clothing, and that each and all agree and bind themselves that none of them at any time will directly or indirectly engage in or be interested in the business of selling dry goods and children's wear, except boys' clothing, in the town of Fairbanks, at any time, or within five miles thereof." Subsequently Alex Simson purchased the business of Simson Bros. from the partners, Benjamin and Abraham, and engaged in business in Fairbanks in the sale of dry goods, and women's and children's wear in violation of the terms of the contract of sale of the good will clause. On suit by Gordon to restrain Alex Simson from conducting the business in Fairbanks. *Held* that, since Alex Simson was not an owner in the business of Simson Bros. when the contract for the sale of the good will of Simson Bros. was made to Gordon, and received no consideration for the signing of the contract, he was not bound by the contract, and injunction denied.

This case is an action for injunction. To the complaint a demurrer has been interposed, on the ground that the facts stated do not constitute a cause of action against the defendant, and· on other grounds.

The complaint alleges that prior to the 3d day of June, 1911, the plaintiff has been engaged in the business of selling dry goods, women's and children's wear, in the town of Fairbanks, and has built up a lucrative business in that line. Prior to that date the defendant Alex Simson, and his brothers,

Abraham Simson, Benjamin Simson, and Lipman Simson, as owners, were interested in business conducted under the firm name of Simson Bros., being a retail business known to the trade as men's furnishings and dry goods and women's and children's wear, in the town of Fairbanks, and was in competition with the plaintiff in the same kind of business; and that on the date named the defendant Alex Simson, with Benjamin Simson, Abraham Simson, and Lipman Simson, entered into the agreement upon which this suit is based.

This agreement, without reciting all of it, is an agreement on the part of Abraham Simson and Benjamin Simson, as copartners doing business as Simson Bros., with F. S. Gordon, whereby Simson Bros. sold to Gordon a part of the goods contained in their business, which can be included under the heading of women's wear and children's wear, except boys' clothing. The contract provides for the payment of $10,000 cash, and subsequent payments totaling $38,000, or thereabouts; and in addition, for other payments for goods which the contract says are already consigned to Simson Bros. and which Gordon agreed to take up, and for other goods which Simson Bros. have ordered and which are not yet consigned, which Gordon agreed to take up—the total contract amounting to approximately $45,000. Further clauses of the contract state how these payments are to be made—that the goods in substance are to be sold by Gordon in his place of business and the daily receipts are to be applied in the manner stated in various sections of the contract to liquidate further installments agreed to be paid by Gordon on the purchase price.

In the first paragraph, or in the first part of the contract, it says the contract is entered into between Benjamin Simson and Abraham Simson, copartners, doing business in Fairbanks under the firm name of Simson Bros., and recites that "Alex Simson and Lipman Simson joining for purposes hereinafter stated," as parties of the first part. In the conclusion of the instrument and embodied in the contract, there is this clause:

"And in consideration of said purchase and the full performance of this agreement, the said Benjamin Simson and Abraham Simson, doing business as Simson Bros., and the said Alex Simson and Lipman Simson who are interested in the proceeds of said business, but not owners of any part of the goods sold, hereby agree and bind themselves that by this contract of sale, they each and all of them do sell to the said Gordon the good will of said

business of Simson Bros. so far as it relates to dealing in dry goods and women's and children's wear, except boys' clothing, and that each and all agree and bind themselves that none of them at any time will directly or indirectly engage in or be interested in the business of selling dry goods and women's and children's wear, except boys' clothing, in the town of Fairbanks at any time, or within five miles thereof."

It is also stated in the complaint that Alex Simson has bought the business of Simson Bros. and is continuing business in the town of Fairbanks, personally and in his own behalf, under the name or style of Simson Clothes Shop, and in women's and children's wear, in violation of the contract.

Howard J. Atwell, of Fairbanks, for plaintiff.

John A. Clark, of Fairbanks, for defendant.

CLEGG, District Judge. It appears from a study of this contract that it is a contract between Simson Bros., Abraham and Benjamin, and plaintiff, Gordon. Although there is included in the contract, as parties of the first part, Alex Simson and Lipman Simson, their inclusion, as it is said in the statement in the contract itself, is "for the purposes hereinafter stated." In addition to this, throughout the contract, instead of referring to the party of the first part, reference is always made invariably to Simson Bros. It doesn't ever refer to the parties of the first part, wherever any duty or obligation is placed on any party in the contract; reference is made to Simson Bros., and not to the party of the first part. And so the entire contract must be construed.

In the concluding clause quoted, it recites that, in consideration of said purchase and the full performance of this agreement, the said Benjamin Simson and Abraham Simson, doing business as Simson Bros., and the said Alex Simson and Lipman Simson, who are interested in the proceeds of said business, and not owners, do sell the good will of "said business." So that clearly Alex Simson and Lipman Simson are attempting under this clause of the contract to bind themselves to sell to Gordon the good will of "said business," which has reference to the business of Simson Bros., and can have no other construction; but it is seen from the language used that they have no interest in the business of Simson Bros., and they have no interest at all, either as owners or otherwise

in the goods sold. All they have, if you give this language its proper construction, is a money interest, a financial interest, or pecuniary interest in the proceeds of the business of Simson Bros., outside of women's and children's wear (except boys' clothing). They have no interest in women's and children's wear (except boys' clothing) whatever, and the only interest that they have in the business of Simson Bros. is an interest in the proceeds of that business. It might be that Simson Bros. have given them a mortgage upon some of the property of Simson Bros., or that they have some right to participation in the moneys received as a result of the sale of the goods, so that, if it be assumed that the good will of a business can be transferred as to a portion of it, as to a portion of the business (which is doubtful), it certainly cannot be successfully maintained that a person who has no interest in any part of the business, and is merely entitled to a share in the proceeds over and above expenses, presumably, would have any right to convey the good will of that business. All the authorities are to the effect that the good will is something that attaches to the ownership of the business, to its location, to its reputation which it has maintained in the past, and that a covenant to refrain from engaging in business is incident to ownership of the good will; so that if Alex Simson had no interest in the business, which would maintain the right to say he had an interest in the good will of the business, it naturally follows that he has no interest to enable him to engage or bind himself to refrain from engaging in business, when he has no interest in the good will or in the business. So far as the contract discloses, he is just like a total stranger to the contract, that is called in the minute the contract is going to be signed, and is asked to sign, and he does so; but there is absolutely no consideration moving from him to Gordon, and no consideration moving from Gordon to him. He does not agree to anything which he has power to agree to, and Gordon does not agree to do anything with reference to him. You cannot read the contract and come to a conclusion that he received anything, even detrimental, not to say beneficial, from this contract. Although his name is Simson, he has no interest in the business or in the goods sold, or in the good will. If the name was Jones, it would clearly appear; but, because the name is Simson, it looks at first blush, with-

6 A.R.—31

out study of the matter, that he naturally had some interest in the contract.

But the court is satisfied from a careful study of the evidence and authorities relating to it, that Alex Simson has nothing he can transfer with reference to the property transferred, and is not bound by the clause attempting to prohibit him from thereafter engaging in business in said town of Fairbanks. This decision is based upon the reasoning and authority of Judge Taft in the Addyston Pipe Case, 85 Fed. 282, 29 C. C. A. 151, 46 L. R. A. 122, and Clemons v. Meadows, 123 Ky. 178, 94 S. W. 13, 6 L. R. A. (N.'S.) 847, 124 Am. St. Rep. 339. Judge Taft says "no conventional restraint of trade can be enforced, unless the covenant embodying it is merely ancillary to the main purpose of a lawful contract," and the contract in this case is not lawful as to Alex Simson.

The demurrer will be sustained.

⬤═See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes