## Ladd et al. v. Pittsburgh Consolidation Coal Co. et al.

January 21, 1949.

Rehearing denied March 15, 1949.

O. T. Hinton and Hinton & Rice for appellants.

E. C. O'Rear, Allen Prewitt, A. Joe Asher, and Louis Preston Collins for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Pittsburgh Consolidation Coal Company brought an action in the Letcher Circuit Court against J. Mitchell Ladd and Flossie Cora Ladd, his wife, and Lincoln Investment Corporation in which it sought to have enforced certain provisions in two deeds which it had executed to the defendants. The action was brought under the Declaratory Judgment Act, Civil Code of Practice, section 639a—1 et seq., and the plaintiff asked for a declaration of the rights of the parties. From a judgment declaring the rights of the parties, the Ladds have appealed and seek a reversal chiefly on the ground that all persons ''who have or claim any interest which would be affected by the declaration'' have not been made parties to the proceeding, and the action, therefore, should have been dismissed and relief denied.

The property conveyed by the two deeds in controversy is located in Jenkins, a city of the fourth class. Jenkins has a population of approximately 10,000, and is located in a rich coal mining district. The town dates from 1912 when the mining of coal began in the vicinity, and its growth has paralleled the growth of the coal mining industry. From 1912 to 1946 the Pittsburgh Con-

solidation Coal Company and its predecessor, the Consolidation Coal Company, owned most of the real estate in the town, and most of the adult population was employed by the Company. It owned the dwellings occupied by its officials, miners and other employees, and it owned and operated stores, utilities, a hospital, a theatre, and provided recreational facilities and other services for its employees in that part of Jenkins owned by it. The Company determined in 1946 to divest itself of all properties and businesses not directly related to the mining and selling of coal, and to retain only its administration building, machine shops, services and other properties used directly in the coal business. Before placing the property on the market, the Company consulted several experts on city planning and a plan was adopted for the development of the city, particularly the business section, in an orderly manner. One method of carrying out the plan was to place restrictions in the deeds to prevent unsafe or otherwise undesirable constructions, and another was to require the operation of needed business enterprises on the land conveyed. Since adoption of the plan the Company has sold practically all of the residential property, much of the business property and several vacant lots. On June 29, 1946, the Company conveyed to Lincoln Investment Corporation a lot fronting 109 feet on Main Street. The deed contained these provisions:

"2—The party of the second part will erect, maintain and for a period of twenty-one years operate upon the premises conveyed a modern building adequate for the following purposes: To provide facilities for an air-conditioned theater with upward of one thousand seats and will operate such theater, also adequate for a modern drug store and will lease it for operation, same to provide efficient prescription service, also with space proper and available for a bank, also with an air-conditioned recreation room equipped with modern bowling equipment and will operate such room, or lease to others to do so, and also providing sufficient space at no costs to the community on the second floor for a public library;

"3—The party of the second part agrees that for a period of twenty-one (21) years from the date of this deed said theater and recreation room will be used to

furnish entertainment and said drug store merchandise, all of as good quality and at as reasonable prices as prevail for like recreation and merchandise in the nearest points where competition at the same points exist; and that the party of the first part, its successors and assigns, shall have the right to enjoin any use whatsoever of said premises except in accordance with all the provisions of this deed and to damages for any violation thereof, all without prejudice to any remedies otherwise available to it or them or to the public. The party of the second part further agrees that for a period of five years from the date of this deed, it will not use the premises hereby conveyed for the purpose of selling merchandise except for the customary operation of said drug store and except for the sale of such confection, refreshments and other merchandise as is customarily sold in theatres and bowling alleys; and

''The party of the first part agrees that, provided the party of the second part, its successors, lessees, and assigns shall have continued to provide the community with all the services hereinabove enumerated at reasonable cost measured by the cost of like services at the nearest points where competition exists, the party of the first part so long as it may own it during a period of twenty-one (21) years from the date of this deed, will not permit the use of any of its property on the waters of Elkhorn Creek, within the Town of Jenkins for a moving picture theater.''

The theatre owned and operated by the Coal Company had burned shortly before this deed was executed.

The Lincoln Investment Corporation was unable to begin the construction of a theatre because of Federal wartime restrictions on building which were still in force. It applied for a permit, and its representatives corresponded with and visited the Federal Housing offices in Washington and Louisville, but the application for a permit to erect a theatre was rejected. The Federal restrictions on such building were not lifted until March 15, 1948. In the meantime the Pittsburgh Consolidation Coal Company conveyed to the Lincoln Investment Corporation a brick building, formerly used as a power house, which was converted into a movie theatre as a

temporary makeshift. The Corporation spent $21,500 for equipment, including seats, which it planned to move to the new theatre when constructed. When this suit was brought on August 25, 1948, the Lincoln Investment Corporation had not begun construction of the buildings, including the theatre, referred to in the deed of June 29, 1946, but shortly thereafter it conveyed 59 feet of its 109 foot frontage to the Allied Investment Company which assumed the grantor's obligations as to erecting and operating the store and office building. This conveyance was made with the approval of the Coal Company. The remaining frontage of 50 feet was sold to Letcher Theatres, Inc., with the approval of the Coal Company, and the purchase money and deed were placed in escrow pending the outcome of this litigation. In the deed Letcher Theatres, Inc., assumed the obligations of Lincoln Investment Corporation relative to the erection and operation of a theatre. On July 24, 1947, the Pittsburgh Consolidation Coal Company conveyed to J. Mitchell Ladd and Flossie Cora Ladd a large business lot just west of the post office. The deed contained these provisions:

"A portion of the consideration moving grantor to execute and deliver this deed is that grantees agree to construct buildings on said property and operate or cause to be operated therein certain businesses as needed by the community, of such character and type as will meet the approval in writing of grantor, and grantees agree to submit full plans and specifications for each building proposed to be constructed, to grantor and receive grantor's written approval thereof before construction begins, all to the end that the shaping of the future Jenkins will conform with a substantial and symmetrical pattern; and grantor hereby assures grantees that it will promptly give its approval to structures built of substantial materials front-faced with brick or tile, for operation of one or more of these businesses:—A Service Station; an Automobile Sales Agency; a Garage for Service and Storage purposes; a Restaurant; a Hotel with Pool Room, Barber Shop and Beauty Shop; Bowling Alleys; Plumbers Shop;—provided grantees will, in advance of construction, submit plans and specifications for grantor's approval. * * *

"(4) This deed is made subject to a certain clause

in deed from Pittsburgh Consolidation Coal Company to Lincoln Investment Corporation dated June 29, 1946, whereby the Coal Company agreed it would not operate, nor permit to be operated any moving picture theater on any of its lands on the waters of Elkhorn Creek in Letcher County, Kentucky, for a period of twenty-one years from date of that deed.

"To Have and to Hold, subject to said exceptions, reservations, and agreements, unto the grantees, their heirs and assigns forever, with covenant of general warranty, save only as to reversionary rights hereinbefore described."

The Ladds began the construction of a large building designed to house a garage, filling station and two restaurants. On June 29, 1948, when the building was practically completed, they applied to the Coal Company for an additional strip of land at the west end of the lot theretofore conveyed to them. A. R. Martin, property manager of the Coal Company, testified that the Ladds represented to him that they intended to pave the additional strip with concrete and use it to accommodate trucks. The additional strip was conveyed to the Ladds, and they immediately began extending the building over it. They erected a sign on that part of the building ostensibly constructed for use as a garage which read: "Proposed location for Jenkins air conditioned 500 seat theatre. Most modern theatre lobby in Eastern Kentucky." This was the first notice the Coal Company had that the Ladds intended to convert the garage into a theatre. The Coal Company protested immediately in writing, and A. R. Martin, its property manager, protested in person to Mr. Ladd. Mr. Martin testified:

"In an effort to try to stop him without taking him into court, I arranged to have him meet with me in the attorney's office. I told him he was operating against our wishes, against the rights given him in the deed and asked him in an amicable way to desist and he said he would not that all his plans were made."

The Coal Company then brought this suit.

Section 9 of the Declaratory Judgment Act, Civil Code of Practice, section 639a—9, provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

It is appellants' contention that the City of Jenkins, all of its inhabitants, the Allied Investment Company, Letcher Theatres, Inc., and all persons to whom other property has been sold by the Coal Company are necessary parties since their rights and interests are affected by the judgment, and that the court should have declined to make a declaration of rights. We are unable to envision such a wide scope for the effect of the judgment. Section 2 of the Declaratory Judgment Act provides that any person interested under a deed, provided always that an actual controversy exists with respect thereto, may apply for and secure a declaration of his rights or duties, and section 9 provides that all persons shall be made parties who have or claim any interest which would be affected by the declaration. Here, the parties to the deeds are the only persons who have or who can claim any interest which will be affected by the declaration. The sole controversy is with respect to appellants' right to construct and operate a theatre on the lot conveyed to them in the face of the restrictions contained in their deed. No one other than the parties to the deed, except the Lincoln Investment Corporation, can possibly have any interest which will be affected by the outcome of that controversy. It is insisted that Allied Investment Company and Letcher Theatres, Inc., are necessary parties since they have purchased or agreed to purchase the lot sold to Lincoln Investment Corporation. Allied Investment Company purchased a part of the lot and assumed the obligation to erect a store and office building. It is not interested in the remainder of the lot upon which a theatre was to be erected. Letcher Theatres, Inc., agreed to purchase this part of the lot during the pendency of this suit, and consummation of the sale is made dependent upon the outcome of the litigation. Letcher Theatres, Inc., is in privity with Lincoln Investment Corporation, and, under the circumstances, is not a necessary party. As to the City of Jenkins and its residents, they certainly have no such interest in the construction of the restrictive

covenant in the deed to appellants as to make them necessary parties. None of the cases cited by appellants is similar to the present case. All of them are cases where the plaintiff failed to make parties to the action such persons as joint owners, remaindermen, or others directly interested in the subject matter.

The Circuit Court adjudged that the deed to appellants prohibited for a period of 21 years the erection and operation of a threatre on the lot conveyed, and that the restriction was valid and binding. Appellants insist that the restrictive provision is invalid because it is in restraint of trade and tends to create a monopoly. Contracts which tend to create monopolies are frowned upon by the courts, but we have uniformly held that the seller of real estate may impose special restraints on the use of the property. Such restrictions are valid if reasonable and limited as to territory or duration. Johnson v. Stumbo, 277 Ky. 301, 126 S.W.2d 165; Sutton v. Head, 86 Ky. 156, 5 S.W. 410, 9 Am.St.Rep. 274. Here, the restriction is limited in time to 21 years. There is evidence that there are two other movie theatres in Jenkins, and there is no proof that there are no lots not owned or controlled by the Pittsburgh Consolidation Coal Company available for such a purpose. Honorable Astor Hogg, who sat as special judge in the case, wrote a well considered opinion which has been made part of the record. On the question of the reasonableness and validity of the restrictions in the deed to appellants, we approve and adopt the following from the opinion:

"The authorities in Kentucky are of one accord that contracts or restrictive covenants in restraint of trade are enforceable if they are not unreasonable and do not have a tendency to unduly restrict competition, or to create monopoly, and are not inimical to the public interest. While the courts have manifested some disfavor of covenants restricting the use of property they are generally sustained, if they are not condemned by the evils tending to monopoly, and are reasonable and limited as to territory and duration. Johnson v. Stumbo, 277 Ky. 301, 126 S.W.2d 165; Anderson v. Jett, 89 Ky. 375, 12 S.W. 670, 6 L.R.A. 390.

"The test of reasonableness is whether the restraint, considering the situation and circumstances, is such only

as to afford a fair protection to the legitimate interests of the parties in favor of whom it is given, and not so extensive as to interfere with the interest of the public. Primarily such a contract must be ancillary to the main purposes of a lawful contract and necessary to protect covenantee in the enjoyment of the legitimate fruits of the contract, Johnson v. Stumbo, supra.

"Consolidation owned substantially all of the property in Jenkins and desired to sell such holdings, except that part thereof necessary for its offices and the like, but it desired to do same according to plan and so as to leave the town in a self-sustaining position, both for the benefit of the properties which it was to retain and for the benefit of the residents of the town who were largely employees of Consolidation. Thus, we have one party who had the exclusive right to maintain a motion picture theatre in a limited territory selling a part of its property for the erection of a motion picture theatre to another party, and obtaining cash and other valuable considerations therefor, and as a part of such sale agreeing not to compete either directly by the operation of a theatre business on its remaining premises, or indirectly by allowing others to operate a theatre on its remaining premises in such limited territory for a period of twenty-one (21) years. While this contract or covenant was to prevent competition in trade, yet it was only a partial restraint and for a limited territory and for a limited period. Vanover v. Justice, 180 Ky. 632, 203 S.W. 321, L.R.A.1918 E, 662.

"It seems to me that under the precedent of the case of Johnson v. Stumbo, supra, wherein the Court of Appeals held valid a contract between owners of a private hospital that they would not set up another in the same county in competition with that which they were selling for a period of ten (10) years, the covenant between Consolidation and Lincoln seems to be valid and enforceable.

"Consolidation, as a part of its general plan or scheme for the development of the future city of Jenkins and for the benefit of the property which it retained, restricted the use of the property sold the defendants, Ladd, to the erecting of such buildings and maintaining of such businesses as would meet plaintiff's writ-

ten approval and then made certain provisions as the building requirements and named certain businesses to which it would grant its approval forthwith. It seems these provisions are reasonable and don't materially impair the use or enjoyment of the estate conveyed. Under Consolidation building plan or scheme to make the city independent and self-sustaining, such a restriction was practically necessary and cannot be said to be contrary to the public good or interests. The only limit placed on the Ladds business activities on said land is that they first obtain the written consent of Consolidation before erecting a building or beginning a business thereon; such consent could not be unreasonably withheld without legal recourse on the part of the defendants, Ladd. Neither does this restriction appear to be in restraint of trade or for the purpose of creating a monopoly."

Appellants argue that the lot conveyed to them is not subject to the restriction in the Lincoln Investment Corporation deed after it passed from the ownership of the Coal Company, but the answer to the argument is that their deed contained covenants binding them to construct buildings on the lot and to operate, or cause to be operated, certain businesses needed by the community. The operation of a theatre was not included among the permissible uses. Furthermore, appellants' deed, by reference to the Lincoln Investment Corporation deed, specifically prohibited the operation of a theatre on the lot for a period of 21 years.

We find no merit in the contention that Lincoln Investment Corporation's delay in constructing a theatre building on its lot relieves appellants of the restrictive obligations in their deed.

The judgment is affirmed.