**HUMANA, INC. (Formerly Extendicare, Inc.) and Humana of Kentucky, Inc. (formerly Extendicare of Kentucky, Inc.) and Ostertag Opticians of Kentucky, Inc. and Southern Optical Company, Appellants,**

v.

**Frank R. METTS and Miller Kimbrough, Jr., co-trustees, and the Old Kentucky Real Estate Investment Trust (a Kentucky business trust) and Saint Matthews Co., Inc. and Professional Towers Corporation and Richard H. Leslie and Beatrice S. Leslie, Appellees.**

Court of Appeals of Kentucky.

Discretionary Review Denied
Oct. 24, 1978.

Marvin J. Hirn, Greenbaum, Doll, Matthews & Boone, Louisville, for appellants.

Marvin M. Sotsky, Louisville, Walter L. Porter, St. Matthews, for appellees.

Before COOPER, HOWARD and WILHOIT, JJ.

COOPER, Judge.

This is an appeal from an order and judgment of the Jefferson Circuit Court, Chancery Branch, permanently enjoining the appellants herein from conducting various business ventures due to certain restrictions as contained in a deed of conveyance. There is also an amended order and judgment being appealed in this case.

On April 17, 1969, Frank R. Metts and Miller Kimbrough, Jr., as co-trustees, who hereinafter for brevity will be referred to as Metts, purchased a 95.48 acre tract of unimproved land in Jefferson County, Kentucky, for the sum of $2,387,000.00. It has been subdivided into acreage tracts and is known as the "Village Subdivision".

On the same day that Metts received the property, they conveyed about twenty (20) acres of the area to the appellant, Extendicare, Inc., for the sum of $800,000.00. In January of 1974, the name Extendicare, Inc. was changed to Humana, Inc. and all references hereinafter will be referred to as Humana. It is provided in the deed as follows:

It is hereby agreed and understood that the property herein conveyed shall be used for hospital, extended care nursing home facilities and for professional office use only.

On September 9, 1969, nearly five months after the conveyance in which the limitation is contained, a "deed of correction" was executed between the parties and duly recorded in the office of the County Court Clerk of Jefferson County, Kentucky. In this deed of correction it is set out that Metts attempted to convey to Humana the property described in the April 17, 1969, deed " . . . but through error the draftsman of said deed did not properly and fully describe the property to be conveyed therein, and, whereas it is the desire of the parties hereto to correct said error". Thereafter follows another lengthy metes and bounds description which purportedly accurately and correctly describes the land therein conveyed. The deed is properly executed and recorded. It is provided in this deed that Metts:

(h)ereby releases, remises, relinquishes, quitclaims and conveys unto the party of the second part, in fee simple, with covenant of general warranty, any and all right, title, interest and claim they may have in and to the hereinafter described real estate situated in Jefferson County, Kentucky.

Likewise, Humana:

(R)eleases, remises, relinquishes, and conveys unto the party of the first part in fee simple any and all right, title, interest and claim in any to any of the property described in the original deed dated April 17, 1969, recorded in Deed Book 4269, page 75 in the office of the clerk aforesaid, which is not included in the hereinafter described property.

Humana has constructed two buildings on the premises, to-wit: Suburban Hospital (hereinafter referred to as the Hospital) and Suburban Medical Center (hereinafter referred to as the Medical Center). It has entered into leases for the rental of space in the Medical Center to Ostertag Opticians of Kentucky, Inc. (hereinafter referred to as Ostertag) and Southern Optical Company (hereinafter referred to as Southern Optical). It is also operating a pharmacy and a doctors club. Appellees contend that such use to which the building is proposed to be put by Humana and its lessees is in violation of the provisions of the deed and they seek to halt the use of the building in such a manner. Appellants deny that there is a use restriction in their deed and they also deny that their proposed use will violate any deed provisions.

The issues made and which are to be determined by the Court are set out in the trial court's orders of January 25, 1974, and February 6, 1974, as follows:

A. Did the deed of correction dated September 9, 1969, and of record in Deed Book 4305, page 411, in the office of the County Court Clerk of Jefferson County, Kentucky, eliminate the restrictive covenant in the deed dated April 17, 1969, and recorded in Deed Book 4269, page 75 in the aforementioned Clerk's office?

B. Have the defendants, or any of them, wrongfully breached, the use restriction in the subject deed dated April 17, 1969, and recorded in Deed Book 4269, page 75, in the Jefferson County Court Clerk's Office; and thereby caused damage to plaintiffs or any of them; provided, however, said plaintiffs or any of them have standing to enforce such use restriction, if any.

C. Does the phrase "for professional office use only" contained in the deed dated April 17, 1969, aforesaid, permit the type of business use and operations offered by the defendants, Ostertag Opticians of Kentucky, Inc., or Southern Optical Company; or a pharmacy business?

D. Have the plaintiffs, Frank R. Metts and Miller Kimbrough, Jr., co-trustees and The Old Kentucky Real Estate Investment Trust, by their conduct and actions subsequent to the execution of the aforementioned deed dated April 17, 1969, waived the applicability of the restrictive covenant contained in the aforementioned deed?

E. Is the expression "for professional office use only" hereinabove mentioned and as set out in the aforementioned deed, void or unenforceable because it is an unlawful restraint of trade or an unlawful covenant not to compete?

After conference with counsel, the pretrial order of the trial court dated January 25, 1974, was amended to include as one of the issues to be determined by the court the following:

C. Does the phrase "for professional office use only" contained in the deed dated April 17, 1969, aforesaid permit the type of business use and operations offered by the defendants, Ostertag Opticians of Kentucky, Inc., or Southern Optical Company; or a pharmacy business, or a facility in the nature of an exercise club. (Underlined portion is language added to the original order.)

On March 6, 1969, which was prior to the date that Metts took title, they entered into a written contract with Humana for the sale and purchase of the subject property. One of the provisions of this contract states that:

10. It is hereby specifically agreed and understood that the property herein conveyed to Extendicare (Humana) shall be used for hospital, extended care nursing home facilities, and for professional office use only. Said restrictions to be appropriately set out in the deed of conveyance. Metts further warrants that the property is presently zoned for these uses. No other use shall be made of the subject property without the express written consent of Metts.

The lease with Southern Optical is dated March 28, 1973, and the lease with Ostertag is dated February 26, 1973. Each provides for first floor space in the Medical Center. The pharmacy is on the first floor and the doctors club is on the lower level floor.

Although the club is named doctors club, it is not limited to doctors, but anyone who applies and is approved by the hospital administrator is eligible for membership. Of the 50 or 60 members, about twenty-five percent (25%) are tenants in the building, and of the membership about ninety to ninety-five percent (90%–95%) are doctors. The maximum capacity is about 200 and the annual dues are $72.00. The club offers squash and handball courts, a lounge and furniture, pool table, color television, sauna bath, showers, lavatories and an exercise

room containing weights, pulleys and electric treadmills.

The pharmacy is equipped to and does furnish prescription drugs, patent medicines, first aid articles, tooth brushes and other items commonly found in a drug store to the general public.

The Old Kentucky Real Estate Investment Trust, hereinafter referred to as Old Kentucky, is as its name indicates a real estate investment trust corporation organized under the Kentucky laws. It owns an undivided one-half interest in a one story office building known as DuPont Square North, which adjoins the property of Humana. The appellees, Leslies, personally own five plus acres of unimproved ground, and they are the major shareholders in the Professional Towers Corporation which owns four plus acres on which is located a seven-story office building called "Professional Towers". These nine plus acres are just across the road and within 500 feet. more or less from the property owned by Humana. The office building is appraised at $5,350,000.00.

The St. Matthews Company is the leasing agent for and manager of the Professional Towers Building. The real estate owned by the Leslies and Old Kentucky is part of that conveyed to Metts by deed dated April 17, 1969. They are common grantees with Humana from Metts, the grantor. All appellees, other than Metts, derived their interests subsequent to the deed from Metts to Humana in which the restrictive covenant is set out, and their ownership came from a common grantor as heretofore mentioned.

We must bear in mind at this time and at all times during the treatise of this case that we are talking about a purchase of land costing in excess of $2,000,000.00, the use of buildings valued in excess of $10,000,000.00 and the future use and development of land, the original cost of which was $40,000.00 per acre.

The unrecorded contract for the sale of the land by Metts to Humana dated March 6, 1969, reserved to Metts the right to change, relieve or lift the use restriction. The subsequently executed deed from Metts to Humana dated April 17, 1969, did not reserve to anyone the privilege or right to change or grant relief from the restriction. According to the terms of the deed, the premises therein conveyed were to be used "for professional office use only." The deed of correction was occasioned by a need to straighten out the boundary line, and had no further effect than to do so. Counsel for appellants, throughout the proceeding, has referred to the deed of correction as a quitclaim deed. It matters not what you call the instrument. The objective is to ascertain the intent of the parties. What did the parties mean by what they said? The terms, conditions, provisions and restrictions of the contract for the purchase were merged into the deed of conveyance. Any conflict between the two must be construed in favor of the latter. There is no authority given in the deed for anyone to grant relief from the restrictions.

In developing a subdivision such as the subject one, meticulous care must be taken so as to encourage an orderly and financially profitable project, at least a plan which speculators and developers can consider feasible and on which they can rely when undertaking a million dollar plus project. For a restrictive covenant to be personal, it must have been designed for the limited use of the grantor or a designated beneficiary. For a restrictive covenant to run with the land, it must be one that, when made, is designed for the protection of the grantor and property owners other than the grantor or its designated beneficiary.

█ Proper development of the subdivision inures to the benefit of each property owner. · Metts was confronted with the possibility of Humana constructing commercial mercantile undertakings to the prejudice of their use and development of the balance of the land by other purchasers. If the restrictive covenant did not run with the land, then the only person who could enforce its provisions would be Metts. On the other hand, if the restrictive covenant runs with the land, then Metts is not the only person with a right to challenge the present use being made of the property by Humana.

*Bagbey et al. v. Stewart's Executor et al.,* Ky., 265 S.W.2d 75 (1954). It appears to the Court that the restrictive covenant ran with the land and was not wholly personal to Metts and Humana.

The phrase "professional office use" means just what it says, office use by a professional person, not a commercial undertaking. The evidence discloses that the pharmacy is being operated with very little difference from the usual and ordinary pharmacy or drug store prevalent throughout this area. Ostertag and Southern Optical, although possibly having a professional person in attendance, present themselves to the general public as retail merchandisers. The sale of merchandise can and usually is made by any clerk without any specialized training or professional ability.

The doctors club can hardly be classified as a professional office. It is purely and simply a place to rest and relax. It is not even limited to doctors, but anyone securing the consent of the business manager and having $72.00 to pay the dues may become a member and make use of its facilities. These types of undertakings are not permitted by, but are in violation of the restrictive covenant.

The Leslies, knowing of the restriction and relying on it, purchased two tracts of land. On one of these tracts of land there is a seven-story office building. The other is undeveloped.

Mr. Johnson, Vice-President of Old Kentucky, purchased an undivided one-half interest in "DuPont Square North" an office building adjacent to Humana's property, only after he had checked into the validity of the restrictive covenant.

The deed to Humana was the first sell-off made by Metts after their acquisition. Ne deed restrictions were placed in any subsequent deed. It does not follow, however, that the restriction placed in the deed to Humana is improper or unenforceable by reason of the restriction not having been put in subsequent deeds. A reasonable restriction on the use of land, even though eliminating it from being used for a certain designated purpose is not necessarily improper.

In the case of *Franklin v. Moats,* Ky., 273 S.W.2d 812, at page 812 (1954), the Court of Appeals stated:

> In order to carry out a general scheme or plan for a whole subdivision it is not necessary that every lot therein, regardless of the prominence of the street upon which it faces, must bear the same restrictions as all other lots in it.

In the case of *Ladd v. Pittsburgh Consolidation Coal Co.,* 309 Ky. 405, 217 S.W.2d 807 (1949), the Court of Appeals said:

> Contracts which tend to create monopolies are frowned upon by the courts, but we have uniformly held that the seller of real estate may impose special restraints on the use of the property. Such restrictions are valid if reasonable and limited as to territory or duration. *Id.* at 811. The authorities in Kentucky are of one accord that contracts or restrictive covenants in restraint of trade are enforceable if they are not unreasonable and do not have a tendency to unduly restrict competition, or to create monopoly, and are not inimical to the public interest. *Id.* at 811.

The appellee, Metts, and the appellant, Humana, mutually agreed to the use description.

It is not for the Court to make a contract for the parties. It is not for the Court to ascertain what the parties meant to say. It is for the Court to determine what the parties meant by what they did say. In this subject action, the parties spoke loudly and clearly. The property was not one for mercantile business, but the property was for office professional persons only.

In view of the above, the trial judges, in both the original and amended judgments found that the restrictive covenants in the deed had been violated by the appellants, and that the appellees were entitled to injunctive relief from continued violation and they were permanently enjoined from conducting the following business operations:

1. Optical dispensing and similar business operations customarily associated therewith, and those specifically

identified as Ostertag Opticians of Kentucky, Inc. and Southern Optical Company;

2. Drug store and pharmacy; and

3. Any and all other uses, specifically including the exercise club presently in operation, except hospital, extended care nursing home facilities and professional office use.

With this we agree.

We find no merit in the appellant's argument that Metts, by conduct and actions subsequent to the deed, waived the applicability of the restrictive covenant.

The judgment and amended judgment are hereby affirmed.

HOWARD, J., concurs.

WILHOIT, J., concurs in part, dissents in part.

WILHOIT, Judge, concurring in part and dissenting in part.

I concur in the result reached by the majority except as to its conclusion that the pharmacy and optical dispensaries do not fall within the meaning of "professional office use" as used in the deed restrictions. I believe these establishments are ancillary medical services which were not intended to be prohibited by the restrictions.